BERTHA CHRISTIANSEN v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, and WILLIAM SHELTON, ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.—62 S. W. (2d) 828.

Division One, August 3. 1933.

*T. E. Francis, B. G. Carpenter* and *Allen, Moser & Marsalek* for appellant.

410

*Lee, Fricke & Lee* and *John P. Leahy* for respondent.

412

ATWOOD, J.—This case, recently lodged with the writer, is an appeal taken by the St. Louis Public Service Company, a corporation, from a judgment for $18,000 rendered against it and William Shelton, on a verdict for that amount in favor of plaintiff, Bertha Christiansen, in an action for personal injuries alleged to have been directly and proximately caused by the negligence of both defendants in so managing and operating a street car and an automobile that they collided with each other and the automobile was thereby forced upon the sidewalk where plaintiff was waiting to board said street car so that it struck and seriously injured her.

The answer of defendant Public Service Company was a general denial. Defendant Shelton was not represented by counsel and filed no answer but appeared and testified at the trial with other witnesses in his own behalf and did not appeal from the judgment rendered.

Errors are assigned to action of the trial court in overruling defendant Public Service Company's demurrer to the evidence interposed at the close of all the evidence in the case; to the giving of plaintiff's requested instruction numbered 1; on the ground that the verdict against both defendants, returned under instructions numbered 1 and 2, is contrary thereto in that said instructions are contradictory; and on the ground that the verdict was excessive.

Appellant's first point, as set forth in its brief, is that the court "erred in refusing to peremptorily direct a verdict for appellant at the close of all the evidence in the case, for the reason that the evi-

dence showed that plaintiff's injury was proximately due to the negligence of the defendant Shelton in the operation of his automobile, and plaintiff failed to carry the burden resting upon her to adduce substantial evidence that some such act or acts of negligence on the part of appellant in the operation of its car directly and proximately contributed to produce such injury.''

Plaintiff went to trial on her amended petition containing a number of specifications of negligence as to each defendant, and alleging that ''as a direct and proximate result of the joint and concurrent negligence and carelessness of both defendants, as aforesaid,'' she was injured as therein described. As stated in appellant's brief: ''Plaintiff's petition proceeds upon the theory that appellant's agents and servants were guilty of negligence in the operation and management of the street car in question; that defendant Shelton was guilty of negligence in the operation and management of his automobile, and that plaintiff's injury was proximately due to the concurring negligence of both defendants.''

In ruling a demurrer to the evidence the question is whether a case was made for the jury upon any issue presented by the pleadings. If there was sufficient evidence to go to the jury on any specification of negligence submitted it is unnecessary to consider other specifications pleaded but not submitted. The negligence pleaded and submitted as to defendant Public Service Company was that its agents, servants and employees, in the management and operation of said street car saw or by the exercise of ordinary care could have seen said automobile ahead of said street car, and failed to exercise ordinary care to move said street car under such speed and to have it under such control as to avoid a dangerous collision with said automobile. A similar charge of negligence was submitted as to defendant Shelton's operation and control of his automobile.

It is apparently conceded that under the evidence defendant Shelton was negligent in the management and operation of his automobile as charged and submitted, and that such negligence was at least a substantial factor in bringing about plaintiff's injury. Appellant contends that it was the sole factor, while respondent insists that under all the evidence defendant Public Service Company was guilty of negligence pleaded and submitted which was also a substantial factor in bringing about such injury and that the concurring negligence of both defendants was the proximate cause. The law is well settled in this State that ''if a defendant is negligent and his negligence combines with that of another, or with any other independent, intervening cause, he is liable although his negligence was not the sole negligence or the sole proximate cause, and although his negligence without such other independent, intervening cause would not have produced the injury.'' [Harrison v. Kansas City Electric Co., 195 Mo. 606, 625, 93 S. W. 951; Miller v. United Rail-

ways Co., 155 Mo. App. 528, 541, 134 S. W. 1045.]  See, also, Restatement, Tohrts (Tent. Draft No. 8), section 314 and comments.

Plaintiff's evidence showed that on February 5, 1928, the date of the accident, at the intersection of Twelfth and Olive Streets Twelfth Street was 150 feet wide from building line to building line forty feet of which space was occupied by a twenty-foot sidewalk on each side, and Olive Street was sixty feet wide from building line to building line twenty-four feet of this space being occupied by a twelve-foot sidewalk on each side.  Defendant Public Service Company had two parallel lines of street car tracks near the middle of each street, the west rail on Twelfth Street being forty-seven feet and four inches east of the outer curb of the west sidewalk and the north rail on Olive Street being ten feet and six inches south of the outer curb of the north sidewalk.

Plaintiff testified that about ten o'clock on the morning of the accident she was standing near the Star Building on Olive Street about six or eight feet west of the building line on Twelfth Street waiting for a westbound Olive Street car; that she saw the street car approaching the east side of Twelfth Street where it stopped for passengers and then started up; that she walked to within three or four feet of the Olive Street curb, signaled to the motorman with her hand and saw him looking right at her; that the street car was going fast; that she remembered seeing an automobile turning west from Twelfth Street on the north side of Olive at a pretty good speed ''and the street car right in back of it and it—the force of the street car hitting the machine swayed it right up on the sidewalk;'' that before she could move more than a step or two the front part of the automobile knocked her down, ran partly over her and then rolled back into the street.  On cross-examination she said that in the collision between the street car and the automobile before the latter struck her the front part of the street car came in contact with the left rear wheel of the automobile.  She was then asked: ''What do you mean by the front part? Do you mean the very front of the street car?''  Her reply was: ''Yes, sir; the left side of the front part of the street car—the right side, I meant to say, of the street car.''  Other witnesses testified that the automobile was proceeding south on the west side of Twelfth Street at a rapid rate of speed, variously estimated at twenty-five to forty miles an hour; that the street car was at the same time rapidly proceeding west on Olive at a speed estimated as high as thirty miles an hour; that the automobile was turned west into Olive Street to avoid striking the street car; and that before the automobile in making the turn had cleared the north street car rail in Olive Street the front end of the street car struck the left rear fender of the automobile forcing it upon the sidewalk and against plaintiff.  So, there was substantial evidence

that the street car and automobile collided and that such collision directly resulted in plaintiff's injury.

Appellant's motorman testified that when he was about ten feet east of the east rail of the northbound street car tracks on Twelfth Street he saw this automobile at least 600 feet away approaching on the north side of Twelfth Street at high speed; that he was moving the street car at eight or ten miles an hour and watching the automobile intently all the while, "watching to get out of the way." However, other witnesses testified that the street car was moving fast all the time, twenty-five or thirty miles an hour, picked up speed about the middle of the intersection, and that the motorman did nothing whatever to slacken speed or stop the car short of the regular stop that was made on Olive Street west of its intersection with Twelfth Street.

From the time the motorman, while on the east side of Twelfth Street, first observed the approach of this automobile he evidently thought the driver was bent on going south in front of the street car without stopping because he testified that he "was watching to get out of the way." One of the questions propounded to the motorman was: "Well, when you were here on the east side of 12th Street, as you indicated here on the map, you could have stopped your street car and let this automobile go by, could you?" His answer was: "No sir; not at the rate of speed he was coming." There was substantial evidence that he was then aware of plaintiff's position. What would be more natural than for the driver of this automobile coming at what one witness described as a "terrific" speed, and finding that he could not proceed south across the intersection without striking the street car, to turn west as he did into Olive Street? Even if, as the motorman said, he could not have stopped the street car in time for the automobile to have passed on south without a collision, the evidence clearly shows that control of the speed of the street car by even a slight slackening thereof in addition to that required to accomplish the usual stop west of the intersection of Twelfth and Olive would have avoided any contact whatever with the automobile. Under the circumstances here in evidence it is no answer for this defendant to say that "the motorman had the right to assume that Shelton would exercise the high degree of care which the law required of him." As said in Restatement, Torts (Tent, Draft. No. 8), section 324: "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the action negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for an injury caused thereby." While in this case there was no proof of the number of feet within which the street car could have been stopped, we think there was substantial evidence that in the exercise of ordinary care the motorman could have seen the approaching automobile when

the street car entered Twelfth Street, and before it reached the middle of the intersection there was "the realizable likelihood" that the very thing would happen that did happen unless the street car was stopped or its speed slackened. From all the facts and circumstances in evidence the jury might well have concluded that the motorman failed to exercise ordinary care to move the street car under such speed and to have it under such control as to avoid a dangerous collision with the automobile, and that such negligence concurred with the negligence of the other defendant in directly and proximately causing plaintiff's injury. Considering all the evidence in the light most favorable to plaintiff, as we must in ruling defendant's demurrer to the evidence, we are constrained to hold that she made a case for the jury under the pleadings.

█ Appellant next insists that the judgment should be reversed because of the giving of plaintiff's requested instruction numbered one, which is as follows:

"The court instructs the jury, if you find and believe from the evidence that Twelfth Boulevard and Olive Street are public highways in the City of St. Louis, Missouri; that the same cross or intersect; that the street car mentioned in the evidence was owned and operated by defendant St. Louis Public Service Company, its agents, servants and employees, and then, if you shall further find and believe from the evidence that on or about the 5th day of February, 1928, about the hour of ten o'clock in the forenoon, plaintiff was standing on the Olive Street sidewalk on the northwest corner of said Twelfth Boulevard and Olive Street, about two or three feet from the curbing on said Olive Street, facing in a somewhat southeasterly direction (if you do so find), and then if you shall further find and believe from the evidence that the automobile mentioned in the evidence, which was owned and operated by the other defendant, William Shelton, suddenly turned from a southerly direction on Twelfth Boulevard to a westerly direction on Olive Street; and then if you shall further find and believe from the evidence that the right front end of said street car struck the left rear end of said automobile, causing said automobile to swerve from a westerly to a northerly direction and to come upon the sidewalk where plaintiff was standing (if you do so find); and then if you shall further find and believe from the evidence that the front bumper or right front wheel of said automobile struck and knocked plaintiff down and dragged her, and that, as a direct and proximate result of such collision, if any, plaintiff sustained bodily injuries; and then if you shall further find and believe from the evidence that the agents, servants and employees of said defendant St. Louis Public Service Company, in the management and operation of said street car in a westerly direction over and across said intersection and approaching said automobile as the same turned from a southerly direction on said Twelfth Boulevard

to a westerly direction on said Olive Street (if you do so find), saw, or by the exercise of ordinary care could have seen said automobile ahead of said street car, then it was the duty of said defendant St. Louis Public Service Company, its agents, servants and employees in the management and operation of said street car to exercise ordinary care to move said street car under such speed and to have it under such control as to avoid a dangerous collision with the said automobile, and if you find and believe from the evidence that said defendant St. Louis Public Service Company, its agents, servants and employees, failed to exercise such care in the management and operation of said street car, and that, as a direct and proximate result of such failure on their part (if you find that there was such failure and that such failure was a negligence), said street car was caused to strike and collide with said automobile and to so deflect its course towards the north as to bring it upon said sidewalk (if you do so find), thereby causing said injuries to plaintiff, if any; and then if you shall further find and believe from the evidence that such negligence of defendant St. Louis Public Service Company, its agents, servants and employees as hereinabove defined, directly and proximately caused or contributed to cause said collision, if you find there was such collision, and that, but for such negligence on the part of said defendant, its agents, servants and employees, said collision and injuries to plaintiff would not have occurred, then your verdict shall be in favor of plaintiff and against defendant St. Louis Public Service Company.''

This instruction is first criticized on the ground that it ''assumes a highly controverted question of fact, namely, that the automobile, after turning into Olive Street, was 'ahead of' the street car.'' It will be observed that the clause in which the words ''ahead of'' occur submits the question of the Public Service Company's negligence ''in the management and operation of said street car in a westerly direction'' both ''over and across said intersection and approaching said automobile as the same turned from a southerly direction on said Twelfth Boulevard to a westerly direction on said Olive Street.'' It is undisputed that while the street car was moving ''over and across said intersection'' the automobile was laterally ahead, that is, west of it until at or about the time the automobile turned west into Olive Street. If the street car ''was approaching said automobile as the same was turned'' westward into Olive Street then said automobile was at that time ahead of said street car and the instruction in that connection expressly left the fact of such approach to be found by the jury. Also, earlier in this instruction it was left for the jury to find whether or not ''the right front end of said street car struck the left rear end of said automobile, causing said automobile to swerve from a westerly to a northerly direction and to come upon the sidewalk where plaintiff was standing.'' With these hypothesized

418

facts left to the determination of the jury it cannot be said that the controverted matter of whether the street car or the automobile was "ahead" after the automobile turned the corner was in anywise assumed in the instruction.

It is next urged that "the effect of this instruction was to charge the jury that appellant's motorman was under an absolute duty to move the car at such speed and to keep it under such control as to avoid a collision with the automobile after the latter suddenly turned into Olive Street, if the motorman, at any time, saw or could have seen the automobile 'ahead of' the car." The duty imposed upon this defendant by this instruction was "to exercise ordinary care" to so move the street car if the jury found all the previously hypothesized facts. Such an instruction did not make this defendant an insurer of plaintiff's safety, as appellant contends.

Counsel for appellant also misconceive the scope and meaning of this instruction when they say that it "deals solely with the situation that was presented to appellant's motorman after the defendant Shelton suddenly turned his automobile westwardly into Olive Street." The evidence shows that the motorman saw this automobile approaching on the west side of Twelfth Street at a high rate of speed when his street car was ten feet east of the east rail of the northbound street car tracks, that he could not stop his car and avoid hitting the automobile "at the rate of speed he was coming," that he was watching the car "to get out of the way," and yet there was substantial evidence that he never tried to stop or slacken the speed of the car while crossing the intersection. This instruction, as above noted, covers his "management and operation of said street car in a westerly direction over and across said intersection" as well as while it was "approaching said automobile as the same turned from a southerly direction on said Twelfth Boulevard to a westerly direction on said Olive Street." Under the pleadings and proof the jury could find that this defendant's duty to so manage and operate the street car arose when the motorman was ten feet east of the east rail of the northbound tracks in Twelfth Street and continued until the street car and automobile came in contact with each other, and it was for the jury to say whether or not such duty was discharged, and if not whether such failure directly and proximately contributed to cause the collision and resulting injury, if any. The questions thus presented were not beyond the pleadings and proof, as contended in appellant's third, fourth and fifth suggestions.

Counsel for appellant also say that no one but the motorman was in position to control the movement of the street car, and hence it was error to give this instruction referring throughout to appellant's "agents, servants and employees." Heinzle v. Ry., 182 Mo. 528, 81 S. W. 848; Gebhardt v. Transit Co., 97 Mo. App. 373, 383, 71 S. W. 448; and Wallack v. Transit Co., 123 Mo. App. 160, 100

S. W. 496, are cited in support of this suggestion. In the cases cited the court instructed the jury that it was the duty of both the motorman and the conductor to "keep a vigilant watch," etc., although under the evidence no such duty rested upon the conductor. Such an instruction reflects a specific charge of negligence which must be proved as laid, while a general charge against defendant includes all of its servants and is sustained if proved as to any of them. [Miller v. United Railways Co., 155 Mo. App. 528, 542, 543, 134 S. W. 1045.] The instruction in this respect conformed to the allegations of the petition and was not misleading.

Counsel for appellant further contend that instruction numbered 1 directs a verdict against appellant upon a finding that the street car struck the automobile, while instruction numbered 2, also given at plaintiff's request, directs a verdict against defendant Shelton upon a finding that the automobile struck the street car, and the verdict for plaintiff against both defendants is contrary to these instructions in that a finding for plaintiff under one precludes a finding for her under the other. We are not impressed with this conclusion. A collision between two bodies broadly means that each strikes the other, and it was the theory of plaintiff that the concurrent negligence of both defendants caused the collision, the negligent failure of the driver of the street car to avoid colliding with the automobile and the negligent failure of the driver of the automobile to avoid colliding with the street car. Instruction numbered one submitted plaintiff's theory of defendant Public Service Company's negligence, and instruction numbered two submitted her theory of defendant Shelton's negligence. The theories were not contradictory or inconsistent, and certainly a finding for plaintiff under one would not preclude a finding for her under the other.

Counsel for appellant finally say that the verdict was excessive. Plaintiff's instruction on the measure of damages, which is not criticized, permitted recovery of a fair and reasonable compensation for her injuries, taking into consideration their nature and extent and whether or not they were permanent; for her damages by reason of physical pain and mental anguish; for her liability incurred in money expended for medical treatment and attention, not exceeding in amount the sum of $1900; for the loss of the earnings of her labor, not to exceed $85 per month; and for her diminished capacity for earning money.

Plaintiff was fifty-one years of age at the time she was thus injured, and was employed by the Jefferson Hotel in the capacity of cashier, receiving a cash salary of $85 a month in addition to room, board and laundry. She suffered a fracture of the left hip described as a "fracture of the neck of the femur within the capsule," besides minor abrasions on the limbs and body. She was taken to a hospital where her hip was set and her left leg placed in a plaster cast ex-

tending from her toes up to her chest. She remained in this condition for about four months when it was definitely determined that the bone was not going to unite. A difficult and serious major operation was then performed by making an incision eight to ten inches long to the bone, and the head of the bone was curetted, fragments that were not healing were clipped off and a piece of bone was then taken from her leg, made into the form of a wedge about five-eighths of an inch wide and driven through the upper portion of the femur into the head of the femur, just keeping outside the joint cavity. She was again placed in a plaster cast extending from her toes up to a few inches below her armpits, and continued so immobilized for about three or four months longer. When this cast was taken off motion was started in her knee and at the time of the trial nearly two years after the accident she was still on crutches. Her surgeons, whose qualifications were not questioned, testified that the bone had never grown but had become smaller in circumference and structure, and that this limb was shorter than the other by one-half to one and one-half inches and would probably become shorter with increased weight placed upon it. At the time of the trial the bone had not formed sufficient union for them to determine whether or not it would ever grow. Her injury was described as "very definitely permanent" and would probably always necessitate the use of crutches or a cane. There was some atrophy on the injured side as a result of disuse. She was confined at the hospital about fifty weeks suffering much pain and discomfort. She was then moved to her sister's home and was there cared for by her for many months. She incurred hospital and medical expenses in the amount of about $1900. At the time of the trial she was still incapacitated from work.

In view of all the evidence we believe the verdict was excessive by $3000. If within ten days after the filing of this opinion respondent enters a *remittitur* for that amount the judgment will stand affirmed for $15,000 as of the date of its rendition; otherwise, the judgment will stand reversed and the cause remanded for a new trial. All concur.