**Frank PRICE, Respondent,**

**v.**

**Ben SEIDLER, Appellant.**

**No. 51721.**

Supreme Court of Missouri,
Division No. 2.

Nov. 14, 1966.

Motion for Rehearing or to Transfer to
Court En Banc Denied
Dec. 12, 1966.

Jack H. Ross, Coleman, Ross & Cekovsky, Clayton, William L. Mason, Jr., Galena, for respondent.

Lashly, Lashly, Rava, Hyndman & Rutherford, by William I. Rutherford, St. Louis, for appellant.

EAGER, Presiding Judge.

This opinion is written on reassignment. The action is one for personal injuries in which plaintiff received a verdict for $24,-000. A motion for judgment or in the alternative for a new trial was overruled, and defendant has appealed. The facts are somewhat unusual and, since the principal contention is that plaintiff did not make a submissible case, we shall be required to state them in some detail.

Austin How was the owner and operator of National Brake Service, a service garage, at 309 S. 7th Street in St. Louis, and the plaintiff, Frank Price, was a mechanic who had been employed by How for six or seven years. Defendant, Seidler, operated a jewelry shop and was an occasional patron of How's. The building occupied by How as a garage was a quonset hut which accommodated three rows of automobiles three vehicles in depth. In front of the building was a small parking area and entranceway sloping toward the building. In August, 1962, and about a week before the occurrences involved here, How had worked

on Seidler's 1959 Chrysler Windsor automobile, inserting a fuse in the air conditioner. Seidler saw him do this, and saw him lie down on the floor of the car to do it. The air conditioner then worked satisfactorily for "say a little over a week" when it went out again; on August 20, 1962, Seidler again took the Chrysler to How and again told him that the air conditioner would not work.

When Seidler arrived at How's garage about 8:00 o'clock in the morning the plaintiff, Price, was working on another car toward the rear of the garage and almost in the center. He was at the back of the car jacking it up; he saw Seidler drive up and saw him stop outside the door of the garage somewhat more than two car lengths from Price. As How walked across the shop Price heard him say that he had a fuse he was going to put in Seidler's car. Seidler, according to Price, was then "standing just aside of his car." Price's account of what occurred a little later was as follows: "I heard the noise of the car, like screeching, sounded like somebody tearing the door down and I turned around to look and I seen this car (Seidler's) just coming at me, so I tried to heave myself up on the back of the car I was working on in order to get out of its way." When he first heard the noise of the automobile and saw the car it was "about ten feet" away and "going too fast, coming so close, real fast" that he was unable to escape; he tried to do so by pulling himself up on the car he was working on. He was thus caught between the cars and suffered severe injuries which we shall refer to later.

Mr. How testified for plaintiff. In substance, his testimony was: that defendant stopped his car perhaps 15 feet in front of the open overhead door of the garage, got out, and told How of his trouble; that the fuse for the air conditioner was located under the dash near the glove compartment; that How slid in under the steering wheel and lay on the floor on his back with his feet on the ground; that the engine was running,

that there was "no doubt" in his mind about that, and that it should be running to test the operation of the air conditioner; that the emergency brake would "have to be on" to keep the car from rolling down the incline; that he could not "say for sure" whether he checked the brake and the gears, but "it's normal" to do so; that he had no recollection of checking the gear buttons. (The gears in that car were operated by a row of buttons on the left side of the dash.) He did not not recall first trying one fuse and then having to get out and go after another one, thus re-entering the car, although that was possible; he further testified, however, that as he was on his back working on the fuse Seidler had leaned in and asked him to listen for a "hissing sound," that he felt Seidler against his legs, and about that time he felt his feet moving and raised up; at that time the car went forward at a "good rate of speed"; it first hit the side of the door, then another car, and finally struck the car on which plaintiff was working, all while How was still on the floorboard. He specifically testified that he did not touch the gear buttons or the ignition (starter) key, that his hand did not come in contact with the gear buttons, nor did he touch any "wires"; that he *must have* hit the accelerator when he raised up, in order for the car to "take off" at the speed it did; that, if the accelerator is depressed, this would overcome the effect of the emergency brake; that this car could not have been started except when its gears were in neutral. (There was no parking gear.) On cross-examination counsel for defendant brought out that the witness remembered that the engine was running, but also got an affirmative answer to a question asking if the "source" of his recollection was the fact that he knew the engine was running while he was lying on the floor; later, the witness testified again that the engine was running when he got into the car, obviously meaning the first or the only time, as the case may be.

There was evidence from the service manager of the agency which repaired de-

fendant's car that the car could not be started when the gears were in "drive," that it could not be driven forward in neutral, and that his agency made no finding of anything wrong with the ignition or gears; also, that there were no wires near the air conditioner fuse which, if struck, would change gears; this witness did testify that a "short" in the right place in the ignition wire could permit the car to be started in any gear. There was no evidence of the existence of any short whatever.

Mr. Seidler testified, in substance, to the replacing of an air conditioner fuse by Mr. How in the same manner about a week before the present occurrences. On the morning now in question he stopped his car in front of the garage, turned the engine off, did not change the gears, pulled on the emergency brake "just tight enough so it would hold," got out, and went in and told Mr. How of his trouble. He further testified: that How lay on the floor, took out the old fuse, got out and got a new one and inserted it, that it still did not work and he got another one; that when he was putting this fuse in, the car "took off"; that he, Seidler, did not lean in the car, and did nothing to it; he first said that How "might have" started the engine; but he further testified that he remembered turning the key off. After considerable equivocation on cross-examination he finally testified that he saw How turn the ignition key, apparently twice, for he said that on the first occasion the car stood still; he also testified that in order to accomplish this How must also have changed the gears, although he did not go so far as to say that he saw that, nor did he recall How shutting off the motor. He finally described the two times when How supposedly turned the key and started the car. He testified that there was nothing wrong with the car, except for the fuse, and that it worked perfectly.

■ Since plaintiff received a favorable verdict, we must accept as true the testimony favorable to him in deciding the question of submissibility. With a brief ex-planation to be made later, we accept these facts: that defendant got out of his car 15–20 feet from the open door of the garage, leaving it on a slight downward incline, in *driving* gear, with the motor running, and the emergency brake on "just tight enough" to hold the car on the incline; also, that he said nothing to Mr. How about the existing conditions; that when the accelerator of the car was depressed the action of the motor would overcome the resistance of the emergency brake; that there was no evidence of any defect in the car which would make it lurch violently forward unless the accelerator was depressed; also, that Mr. How. did not change the gears or start the motor.

■ Defendant's brief contains eleven points, five going to the submissibility of the case and five to supposed errors in plaintiff's main instruction. The first point is that plaintiff's case is based on an "inference" that defendant left the motor running and that the evidence does not sustain that inference. That element did not depend upon an inference; Mr. How testified that the engine was running when he first got into the car (and when defendant got out) and that there was *no doubt* in his mind about that; in substance, he repeated this later. The fact that counsel questioned him as to the *source* of his memory and got him, at one point, to say that the source of his recollection was the fact that the engine was running while he was lying on the floor, and also that he was not sure whether he got into the car once or twice, did not destroy his previous positive testimony; this merely went to the effect and weight of Mr. How's total testimony. Those cases where a party, on cross-examination, completely negatives his direct testimony on a material element are not in point. Musielak v. International Shoe Co., Mo.App., 387 S.W.2d 217.

■ Next, defendant insists that the acts of How in failing to place the gear in neutral and in striking the accelerator constituted an efficient, intervening cause, in-

sulating defendant against any recovery for negligence. Cases might be cited pro and con ad infinitum on this subject but, after all, each case depends upon its own particular facts and it is seldom that one decision really controls another. Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820. It would thus be of no real advantage to discuss individually the authorities cited by defendant. Duke v. Missouri Pac. R.R. Co., Mo., 303 S.W.2d 613; Wright v. Kansas City Structural Steel Co., 236 Mo.App. 872, 157 S.W.2d 582; Cohagan v. Laclede Steel Co., Mo., 317 S.W.2d 452; King v. Ellis, Mo., 359 S.W.2d 685, and Vandeventer v. Shields, Mo.App., 241 S.W.2d 53. The theory of such cases is that the negligence of the defendant was a remote cause which did no more than furnish a condition upon which the distinct, subsequent and unrelated act of another operated, the latter thus becoming the proximate cause. And it is also material to ascertain whether or not the negligence of the defendant had entirely ceased or was continuous and active. Dickerson, supra. This element is clearly recognized in defendant's cited case of Duke v. Missouri Pacific R.R. Co., supra, 303 S.W.2d loc. cit. 618; and the court there stated: "Intervening is used in a time sense. It refers to later events. In the instant case defendant's negligence had ceased to be active, had become passive. It caused no injury. The resulting danger was known. * * * In other cases, as we read them, the defendant breached a duty of a continuing nature and his negligence was active at the time of plaintiff's injury, it not having come to rest." (Citing many cases.) And an intervening cause "may not consist merely of an act of concurring or contributing negligence." King v. Ellis, supra, 359 S.W.2d loc.cit. 688. In 65 C.J.S., Negligence § 111(2), p. 1208, it is said: "One whose negligence combines or concurs with an independent intervening cause in producing the injury is liable, even though his negligence alone, without such independent intervening cause, would not have produced the injury." See also: Gray v. Kurn, 345

Mo. 1027, 137 S.W.2d 558; Dickerson v. St. Louis Public Service Co., supra; and, on liability for concurring negligence under somewhat analogous circumstances, see,— Floyd v. St. Louis Public Service Co., Mo., 280 S.W.2d 74; Cox v. Wrinkle, Mo., 267 S.W.2d 648; Snyder v. Jensen, Mo., 281 S.W.2d 802.

Here defendant remained at all times immediately at the scene of activity, pressed (to some undetermined extent) against How's legs, asked him to listen for a "hissing sound," and it is obvious that the effect of his act in leaving the car in driving gear continued until the very moment of the injury; thus, defendant did not cease to be active in the premises, and his negligence, if the jury should find any, certainly cannot be said as a matter of law to have ceased; nor can it be said as a matter of law that he was relieved by an intervening cause. It was proper for the court to submit his liability for concurring negligence, as it did.

Next, counsel say that defendant should legally be considered as a bailor, with How as his bailee, and that it thus became incumbent upon defendant to warn only of latent defects or dangerous conditions known to him and not obvious to the bailee; further, that this limitation of defendant's duty was binding both upon How and his employee, Price, and that the condition here was "open and obvious" to How, an expert. In support of this theory, counsel cite and discuss sundry authorities on bailment law, and a few cases where the existence of true bailments were obvious. Johnson v. Buckley (C.A.5), 317 F.2d 644; Blankenship v. St. Joseph Fuel Oil & Mfg. Co., 360 Mo. 1171, 232 S.W.2d 954; American Mutual Liability Ins. Co. of Boston v. Chain Belt Co., 224 Wis. 155, 271 N.W. 828. Defendant is thus urging the application of a specific phase or branch of negligence law which would shift and limit his duty and the extent of his liability. If such a theory was to be urged, it certainly should have been brought to the attention of the trial court. The record

shows no mention of it in pleadings, evidence, instructions, nor indeed in the very specific after-trial motion for judgment. The existence of such a relationship and the limitation of liability thereunder would require findings on certain specific issues not submitted to the jury, as counsel seem to recognize in their brief. Certainly, the trial court should have been advised of the theory, if it was ever to be asserted. Under these circumstances the theory is not available for the first time upon this appeal. What we have said does not in any sense assume that the facts and circumstances here would have justified a finding of a true bailment relationship, involving as it does a full transfer of possession and the creation of a special property interest in the bailee. 8 Am.Jur.2d, Bailments, § 19, p. 924, § 56, pp. 961–962, and the sundry cases cited in Note 5 on p. 961; Stegemann v. Miami Beach Boat Slips (C.A.5), 213 F.2d 561.

▮▮▮ Next, defendant argues that How was acting as an independent contractor, in control of the car, and that defendant had no duty to plaintiff with regard to the "obvious position" of the gears. The following cases cited by defendant involve the status of persons or corporations held to have been independent contractors: Hammond v. City of Eldorado Springs, 362 Mo. 530, 242 S.W.2d 479, 31 A.L.R.2d 1367; Stein v. Battenfeld Oil & Grease Co., 327 Mo. 804, 39 S.W.2d 345; Feldewerth v. Great Eastern Oil Co., Mo.App., 149 S.W. 2d 410; West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161; McHugh v. National Lead Co. (D.C.Mo.), 60 F.Supp. 17. Some of these denied recovery to the independent contractor for alleged negligence of the defendant for the reasons that he, the contractor, was the one having control and supposed knowledge at the time, that he was an invitee, and that the defendant was not liable for the results of a condition, which was obvious to such invitee. Stein, Feldewerth, supra. The cases of Hammond, McHugh and West, supra, apparently extend this theory of no re-

covery to employees of the independent contractor. The usual application of the doctrine arises where one is sued because of the acts of another, who may be an independent contractor or may simply be an agent or servant. The determination of the status of the controversial party is ordinarily a question of fact for the jury to determine. Gardner v. Simmons et al., Mo., 370 S.W.2d 359. One highly material factor, and probably the ultimate test in most cases, is the right of the employer to control the work of the employee, and particularly the details or physical conduct. MAI 13.06 expresses the distinction and should be used where a factual controversy exists.

▮▮▮ We seriously doubt the applicability of the doctrine under the facts and circumstances of this case, for the jury had the right to determine that defendant himself left the car in driving gear, that such act was negligent, and that his own negligence continued to be operative and active throughout the whole occurrence. One whose negligence combines and concurs with that of another, or even with an independent intervening cause, to produce injury to another, is liable. Christiansen v. St. Louis Public Service Co., 333 Mo. 408, 62 S.W.2d 828; Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W. 2d 820. As stated in Dickerson, at loc. cit. 824: "If some injury is reasonably to be anticipated or is reasonably probable as a result of the defendant's act of negligence, then the added act of a third person, though he also be negligent, does not break the chain of causation and defendant is liable; in such event the act of the third person is mere concurring negligence." (Citing sundry authorities.) In any event, we hold that the facts in evidence here did not, as a matter of law, establish that How was an independent contractor at the time. Plaintiff remained with How at all times, physically touching him, he made suggestions, he pulled the seat back to allow more room, and he was waiting to take the car away as soon as the supposedly simple operation

was completed. This is not the ordinary situation where the relationship has been held to exist and where there is generally a more complete and lasting transfer of the chattel and of control. We do not hold that there was no submissible issue of fact, but no such issue was tendered, and we do hold that How was not established as an independent contractor as a matter of law.

■ Lastly, on the submissibility of the case, counsel say that injury was not reasonably foreseeable as following from defendant's acts. Such, of course, is an ultimate test of liability. Actually, in making this contention, defendant is saying that How should have seen and corrected defendant's supposed negligence by changing the gears. Counsel cite several cases, most of which we shall not be able to discuss; they rely largely, it seems, on the cases of Kettler v. Hampton, Mo., 365 S.W.2d 518, and Hall v. Lewis, 364 Mo. 1096, 272 S.W. 2d 260. In Hall, the defendant, in driving his car into a car wash, had complied with all directions, and he was held not liable for the supposedly negligent act of a passenger in sliding across the seat and apparently striking the gear shift lever causing the car to lurch forward. The court did not discuss the question of foreseeability. In Kettler, the plaintiff had placed his car on the grease rack in a filling station, leaving it (as he testified) in neutral, with the motor running as directed, and with the brake released; defendant, the station operator, was standing at the driver's side when plaintiff got out; plaintiff then moved to the front of his car, saw defendant lean inside the car, and then leave it for a short time. Plaintiff then heard a "tapping" noise in the motor, raised the hood and standing in front of the car "jiggled the throttle," or "gunned" the motor. The car immediately lurched forward, pinned plaintiff against a work bench and broke his legs. The theory of recovery was that the defendant had shifted the gears from neutral to drive when he leaned into the car; the court held that plaintiff made a submissible case thus holding, at least by inference, that some injury was foreseeable. The detailed discussion of foreseeability was made in connection with an instruction which omitted specific mention of that element; the opinion, as contrasted with the court's actual decision, held the instruction erroneous; on that question two of the three judges dissented, but the case was reversed on another ground. The opinion does affirm the necessity of foreseeability as a basis for actionable negligence, but, it necessarily held that the element of foreseeability could properly be submitted there, under circumstances which to us, did not demonstrate so great a probability of injury as do the circumstances in our case.

■ All that is necessary to establish foreseeability is knowledge, actual or constructive, on the part of the defendant that there is some probability of injury sufficiently serious that the ordinary person would take precautions to avoid it. Zuber v. Clarkson Construction Co., 363 Mo. 352, 251 S.W.2d 52, loc. cit. 55, and cases there cited. This does not require a balancing of "probabilities." id. And, as said in Zuber, supra: " * * * 'If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' Restatement, Torts, § 449; Christiansen v. St. Louis Public Service Co., 333 Mo. 408, 62 S.W.2d 828."

■ For somewhat analogous situations concerning the liability of owners for the leaving of cars in situations involving varying degrees of hazard or danger see, generally: Myers v. Hauser, Mo.App., 61 S.W. 2d 214; Moody v. Clark (Tex.Civ.App.), 266 S.W.2d 907; Block v. Pascucci, 111 Conn. 58, 149 A. 210; Storey v. Parker, La. App., 13 So.2d 88; Schattilly v. Yonker, 347 Mich. 660, 81 N.W.2d 343; Craddock v. Torrence Oil Co., 322 Mich. 510, 34 N.W.

2d 51; Waltzinger v. Birsner, 212 Md. 107, 128 A.2d 617; Hughes v. Rentschler Floral Co., 193 Wis. 49, 213 N.W. 625. It would seem that a reasonable inference might be drawn that the defendant should know that a mechanic would not wish to work on an air conditioner with the motor running and the car in *driving gear,* when he wanted to keep the car stationary. We conclude that the evidence was sufficient to permit a jury to find that defendant might reasonably have foreseen a probability of harm to someone under these circumstances. On all the foregoing points we hold that a submissible case was made.

 Counsel make various attacks on plaintiff's Instruction No. 2. We quote it as follows: "Your verdict must be for the plaintiff if you believe: First, defendant caused the gear control of his automobile to be in driving position, with the engine operating and with no one at the controls, when he knew, or in the exercise of ordinary care should have known, that Austin How would be lying on the floorboard in such close proximity to the accelerator pedal that he was reasonably likely to depress said pedal and thereby cause the automobile to be propelled forward, and when defendant knew, or in the exercise of ordinary care should have known, that there was a reasonable likelihood that persons would be within the garage and would be likely to be struck and to suffer injury, and

"Second, defendant was thereby negligent, and

"Third, such negligence directly combined with the acts of Austin How to cause damage to plaintiff."

The first objection is that the instruction submitted a theory not pleaded. The petition alleged, in substance: that defendant's car was parked near the garage, that it was propelled into the garage and against plaintiff, injuring him, all of which was caused by defendant's negligence, in that he "caused" the parked car "to be placed in gear" with the engine running and "with no

one at the controls * * * when he knew, or * * * should have known that there was a reasonable likelihood" of injury to persons in the garage.

What counsel seem to contend is that because there was no mention in the petition of How, or of How's action or nonaction, or of any reasonable anticipation thereof, the petition necessarily stated as its sole theory that the defendant personally and physically caused the car to go forward, by leaning into it or otherwise; and further, that there was no substantial evidence to support any such theory. We do not construe the petition so narrowly as defendant seems to do. No motion was filed to require it to be made more definite; depositions were taken and the parties were presumably well advised of the facts. Under the circumstances the petition was and is reasonably susceptible of the construction that the defendant left the car in driving gear with the motor running, and that the circumstances were such that he should have anticipated danger. The evidence of the actions and nonactions of How, all of which was received without objection on this score, was a more specific demonstration of how the car was caused to be propelled forward and why defendant should have foreseen some danger. The instruction was within the general scope of the pleadings and the point is denied.

Next it is said that the instruction fails to distinguish between supposed negligence in leaving the car in gear, and negligence in later "leaning" in and placing it in gear. The argument is very technical. So far as we are concerned, if the car was in *driving gear* at the time of the injury because of defendant's act, it makes no difference how or when defendant placed it or left it in that condition. Perhaps the instruction could have been simpler, but it is not erroneous for the reason thus urged.

 Further, counsel say that the instruction assumed (1) that if How was in close proximity to the accelerator he was likely to depress it; and (2), that if defend-

ant knew of the proximity he also knew of that likelihood. Several cases are cited as holding that assumptions of issuable facts are improper; these all arose under our former practice on instructions, but such assumptions are still improper. The court and the Bar have, however, sought to simplify that confused and confusing system; all instructions are now required to be "simple, brief * * * and [they] shall not submit to the jury or require findings of detailed evidentiary facts." This statement, we realize, does not per se answer defendant's argument but it presents a background. Our instructions need not now be so specifically detailed as they formerly were, and they should submit only the ultimate factual issues. The opening phrase of the present instruction directed a verdict only *"if you believe"* the hypothesized facts which followed. In such form we hold that it required the jury's findings that How did lie in such close proximity that he was likely to depress the accelerator and that defendant knew of the proximity and the likelihood. The instruction could not have misled a reasonably intelligent jury.

■ Further objections are made to the instruction. We have considered them and they are denied. It would unduly lengthen this opinion to discuss them in detail. The last point made is that the verdict is excessive and that a remittitur should have been ordered. The verdict was for $24,000, and defendant suggests a remittitur of "at least $5,000." Bones in both of plaintiff's legs were fractured, both bones in his left leg, and various small bones in the right foot; some of these were comminuted fractures; a metal rod 13 inches long and ⅜ths of an inch in diameter was driven into the marrow of the bone of one leg, and removed about a year later; casts were applied to both legs and, after their removal, plaintiff used crutches, a cane or a brace for approximately 10 months; it was necessary to straighten some of his toes by cutting nerves and inserting nails or pins in the bones. Plaintiff was confined to the hospital on three occasions, the first for about seven weeks. At the time of trial he still had difficulty with his right foot, a substantial limitation in the use of the left ankle, with pain and numbness at times in that ankle and foot. He was working at trial time on a different job and at a compensation somewhat higher than previously. He lost approximately forty-four weeks of working time, at a "take-home" pay of $100 per week; his total medical expense was $2,336.12. The medical evidence was that, with reasonable medical certainty, there would be some permanent disability of the left foot and toes, and in the scarring of the tissues and the thickening of bones from the fractures, with some continuing pain and other symptoms. In this situation we do not deem it necessary to compare the amount of this verdict with other verdicts in other cases. It is obvious that there was substantial evidence to support the verdict, and it is not our function, under these circumstances, to "second guess" the jury and the trial court. We rule that the verdict was not excessive.

Plaintiff filed here a motion to dismiss the appeal on the ground that appellant had failed to include in the argument portion of his brief page references to the transcript. Counsel had included numerous such references in their statement of facts. Appellant thereafter tendered as a supplemental brief copies with numerous references so included. We reserved our rulings; we now grant leave to appellant to file the supplemental brief and overrule respondent's motion to dismiss or affirm, which ruling is now of little moment in view of our decision on the merits. However, the occasion requires a few suggestions. Respondent's counsel have not been satisfied to state their position fully in the motion (as they did), but have persisted in arguing the same matter, most repetitiously, throughout their respondent's brief. Seven separate points of that brief begin with the injunction that the corresponding point or points of appellant's brief should be ignored be-

cause appellant's "argument made thereunder is unfair to plaintiff and violates Rule 83.05(a) (4) and (d) [V.A.M.R.] in that said argument contains no specific references to the transcript on appeal." The same matter is repeated, with additions (in one place a full page), under each point in the body of the argument. We do not wish to restrict parties in the filing and presentation of legitimate motions to dismiss under our rules, and we intend to dismiss appeals which constitute substantial and unwarranted violations. However, we feel that we are fully capable of understanding such points, once they are properly raised, and we intend to enforce the rules reasonably, having in mind the interests of the court, of counsel and of the litigants. In this instance our task would have been much easier if counsel, after making the point, had applied themselves more assiduously to the substance of the questions legitimately raised by the appellant on the merits.

The judgment is affirmed.

All of the Judges concur.