417 F.2d 97
 NATIONAL COMPRESSOR CORPORATION, Appellee,
v.
Chester P. CARROW, Harold D. McGee, Rayburn Roy Williams, Frank Spradling, John Hemphill, Jr., and Missouri-Pacific Railroad Company, Appellant.
NATIONAL COMPRESSOR CORPORATION, Appellee,
v.
Chester P. CARROW, Harold D. McGee, Appellants,
Rayburn Roy Williams, Frank Spradling, Appellant,
John Hemphill, Jr., and Missouri-Pacific Railroad Company.
 No. 19503.
 No. 19504.
 United States Court of Appeals Eighth Circuit.
 October 27, 1969.
 
 Charles P. Lippert, St. Louis, Mo., for Missouri Pac. R. Co., James A. Hesse, St. Louis, Mo., on the brief.
 Morton K. Lange, St. Louis, Mo., for Chester P. Carrow, Harold D. McGee and Frank Spradling, Leo C. DeVoto, Jr., St. Louis, Mo., and E. L. McClintock, Jr., Flat River, Mo., on the brief.
 John L. Davidson, Jr., of Greenfield, Davidson & Mandelstamm, St. Louis, Mo., for appellee, Jerome R. Mandelstamm, St. Louis, Mo., on the brief.
 Before VAN OOSTERHOUT, Chief Judge, and LAY and HEANEY, Circuit Judges.
 VAN OOSTERHOUT, Chief Judge.
 
 
 1
 In this case National Compressor Corporation, on the basis of tort liability, obtained a judgment upon a jury verdict against the defendants Williams, Carrow, McGee, Spradling and Missouri Pacific Railroad Company[1] for $12,000 for the negligent destruction by fire of a compressor in which plaintiff asserted ownership. Jurisdiction, based upon diversity of citizenship, is established. Defendant Williams has not appealed. The remaining defendants above-named have taken this timely appeal from the judgment and from the denial of their motions for judgment n. o. v. and for a new trial. The defendants, other than Williams, will be referred to herein as appellants.
 
 
 2
 The Missouri Pacific Railroad by a written instrument dated April 21, 1966, entitled "Bill of Sale" in consideration of $1.00 and services to be performed did sell, transfer and deliver to the buyer, Carrow and McGee, "all of the Seller's rights, title and interest in and to the following goods and chattels" located on the seller's premises at DeSoto, Missouri. Five buildings are then described. The second paragraph of the bill of sale provides:
 
 
 3
 "Upon completion of the removal of the aforesaid property from Seller's premises, Seller hereby agrees that the following described property shall thereafter be the property of the Buyer hereunder, provided Buyer removes same from Seller's premises within the time hereinafter set forth:"
 
 
 4
 A number of items are then described including the compressor involved in this litigation.
 
 The third paragraph reads:
 
 5
 "The Buyer shall, and by accepting this Bill of Sale agrees to (1) come upon Seller's premises only when and where authorized by Seller, and take all precautions to assure safety and compliance with Seller's rules and requirements while on or about Seller's premises, and (2) at Buyer's sole cost, risk and responsibility, as promptly as possible, and in no event more than 90 days following the date hereof, time being of the essence thereof,
 
 
 6
 "(a) remove all said goods and chattels, and appurtenances, and
 
 
 7
 (b) remove all debris from and leave Seller's premises in a clean and neat condition to the satisfaction of Seller;
 
 
 8
 and if Buyer shall fail to do so, Seller may resell same free of any claim of Buyer and accomplish such removal and cleanup for account of Buyer."
 
 
 9
 In the final paragraph, the Buyer agrees to assume and discharge and indemnify and save harmless the Seller from all liability for "loss or destruction of or damage to property whatsoever to whomsoever belonging, in any manner growing out of or connected with the dismantling and/or removal of the aforesaid goods and chattels, * * *" regardless of whether such damage be caused or contributed to by the negligence of the Seller.
 
 
 10
 On April 22, 1966, Carrow and McGee in writing sold the compressor to Samuel M. Davis, to be removed at purchaser's expense within 90 days, for $6,500 which sum was paid. Davis on April 25, 1966, sold the compressor to plaintiff for $12,000 which sum was paid. On May 3, 1966, Earl E. Knox Company submitted a purchase order to plaintiff for the compressor "price as inspected good condition $27,500." No money was paid. After the fire, Knox notified plaintiff it was cancelling the order as the compressor was not in good condition. Plaintiff accepted the cancellation.
 
 
 11
 Before the demolition work was commenced, Carrow and McGee entered into a written contract with Spradling and Hemphill under which the latter for a valuable consideration agreed to do the demolition work and to indemnify the railroad and Carrow and McGee against all damages claims arising out of the demolition and removal operation.
 
 
 12
 Labor difficulties developed which brought about a delay in the demolition work. The railroad became concerned about such delay and the likelihood that the demolition and removal work would not be completed within the agreed ninety-day period. Howard Davis, who was in charge of the project for the railroad, suggested to Carrow, McGee and Spradling that the defendant Williams might be interested in completing the demolition work and arranged for them to meet with Williams. Williams agreed to do the work for $1,000. The contract was oral. Williams testified, "I wouldn't be responsible for anything that happened." This statement is not contradicted by any evidence. After the fire, Williams was paid the agreed $1,000 by Spradling with money provided by McGee.
 
 
 13
 Williams with his employees and equipment proceeded with the performance of his agreement to do the demolition and removal work. A pile of timbers and debris one hundred and fifty feet by one hundred feet, reaching a height of thirty-five feet, was assembled. Williams set fire to the debris pile about 2 p. m. on July 12, 1966. The DeSoto fire department, under arrangements made by Williams, was at the scene with two fire trucks and six or eight men who put at least four hoses in use to control the fire. Superintendent Davis was present with enough railroad employees to man seven water hoses. McGee had been notified of the contemplated fire by Williams or Davis, or both, about a week before the fire and he told them to protect the machinery. He said, "If you can burn without hurting them, go ahead."
 
 
 14
 About 4 p. m. the fire appeared to be pretty well burned out and under control and all of the workers because of the heat went to the main building. Shortly thereafter a fire was discovered in the building containing the compressor. Attempts to extinguish the fire were unsuccessful. The compressor was damaged to the extent that its removal cost would exceed its salvage value.
 
 
 15
 There is evidence that Superintendent Davis came on the job site frequently and that he talked to Williams two or three times a day, giving him orders and directions.
 
 
 16
 Appellants as a basis for reversal assert the court committed prejudicial error in the following respects:
 
 
 17
 1. The rejection of appellants' contentions made in motions for directed verdict at the close of all the evidence and in motions for judgments n. o. v.
 
 
 18
 (a) That the record conclusively shows that plaintiff did not have title to the compressor at the time of the fire.
 
 
 19
 (b) That there is no evidence of negligence proximately causing the damage to the compressor on the part of any appellant and that defendant Williams was an independent contractor for whose negligence the appellants were not responsible.
 
 
 20
 2. In failing to hold that plaintiff had agreed to hold defendant Williams harmless and that plaintiff is thereby estopped from seeking recovery from the appellants as alleged principals of Williams.
 
 
 21
 We reject appellants' contention that plaintiff did not have title or sufficient interest in the compressor to give it standing to bring this action. This issue turns upon the interest acquired by Carrow and McGee by the bill of sale from the Missouri Pacific Railroad. It is undisputed that Carrow and McGee conveyed and delivered their full interest in the compressor to Davis for a valuable consideration and that Davis in turn transferred his full interest to the plaintiff for value received. By such transfers, plaintiff acquired all interest in the compressor, acquired by Carrow and McGee from the railroad.
 
 
 22
 The bill of sale before us in the present case comes within the scope of the Missouri Commercial Code and therefore the provisions of the Missouri Code govern. Section 400.2-102, V.A. M.S., provides, "Unless the context otherwise requires, this article applies to transactions in goods." Section 400.2-105, V.A.M.S., defines goods as "all things (including especially manufactured goods) which are movable at the time of identification to the contract for sale * * *." The compressor fits the foregoing statutory definitions.
 
 
 23
 Appellants urge that under common law and under the Missouri Commercial Code, § 400.2-401 V.A.M.S., the title passes to the buyer in any manner and on any conditions explicitly agreed upon by the parties, and that the parties by their contract evidenced by the bill of sale agreed the title to the compressor did not pass until the work which the buyer had agreed to do was completed and that such performance had not been met at the time of the fire.
 
 
 24
 We are satisfied that the contract does not explicitly provide for the time of passage of title. The contract is ambiguous in this respect and grave doubt exists whether upon a consideration of the contract as a whole, in the light of the surrounding circumstances and the practical interpretation placed thereon by the parties as evidenced by the removal of the buyers of much of the machinery prior to the fire and to the completion of the work, the parties intended to defer passage of title until the work had been fully performed. For the reasons hereinafter stated, we find it unnecessary to resolve the issue of when title passed. Section 400.2-722 provides:
 
 
 25
 
 "Who can sue third parties for injury to goods.
 
 
 
 26
 Where a third party so deals with goods which have been identified to a contract for sale as to cause actionable injury to a party to that contract
 
 
 27
 (a) a right of action against the third party is in either party to the contract for sale who has title to or a security interest or a special property or an insurable interest in the goods; and if the goods have been destroyed or converted a right of action is also in the party who either bore the risk of loss under the contract for sale or has since the injury assumed that risk as against the other; * * *."
 
 Section 400.2-501 reads:
 
 28
 
 "Insurable interest in goods — manner of identification of goods
 
 
 
 29
 (1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are noncomforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs
 
 
 30
 (a) when the contract is made if it is for the sale of goods already existing and identified; * *."
 
 
 31
 It is entirely clear that the compressor here involved as described in the bill of sale constitutes goods already existing and identified within the meaning of § 400.2-501 and hence as a minimum Carrow and McGee obtained a special property and insurable interest in the compressor by the bill of sale. Upon the basis of such special or insurable interest, plaintiff is a person authorized to bring suit for the injury of the compressor under § 400.2-722.
 
 
 32
 Appellants further contention that plaintiff had no interest in the compressor at the time of the fire because they had contracted to sell the compressor to Earl E. Knox Company lacks merit. The Knox purchase order was subject to "inspected good condition." Neither the inspection nor payment was made before the fire. Knox cancelled after the fire. Plaintiff accepted the cancellation. Thus plaintiff had a right to sue under § 400.2-722(a) as a party who has "since the injury assumed the risk (risk of loss) against the other." Further, if the contract was not legally cancelled, it would have a right to sue by reason of having a security interest in the unpaid purchase price.
 
 
 33
 None of the parties to this appeal question the fact that Williams' action in setting the huge fire and his failure to take adequate precaution against its spread is actionable. Appellants predicate their assertion of non-liability upon their contention that Williams was an independent contractor and hence was not an agent of any of the appellants, and that consequently respondeat superior liability does not exist on the part of any of the appellants. Such defense was raised by motions for acquittal and renewed by motions for judgment n. o. v.
 
 
 34
 While as pointed out by the appellants the Missouri courts have in a few instances determined that an independent contractor relationship was established as a matter of law, the question of the nature of the relationship ordinarily is a factual question to be determined upon the peculiar facts of each case. Jokisch v. Life & Casualty Ins. Co., Mo.App., 424 S.W.2d 111, 113-115; Barkley v. Mitchell, Mo.App., 411 S.W.2d 817, 823; Price v. Seidler, Mo., 408 S. W.2d 815, 821; Gardner v. Simmons, Mo., 370 S.W.2d 359, 362.
 
 
 35
 In Price v. Seidler, supra, the Missouri Supreme Court states the controlling law as follows:
 
 
 36
 "The usual application of the doctrine arises where one is sued because of the acts of another, who may be an independent contractor or may simply be an agent or servant. The determination of the status of the controversial party is ordinarily a question of fact for the jury to determine. Gardner v. Simmons et al., Mo., 370 S.W.2d 359. One highly material factor, and probably the ultimate test in most cases, is the right of the employer to control the work of the employee, and particularly the details or physical conduct. * * *" 408 S.W.2d 815, 821.
 
 
 37
 In our present case, there is ample evidence to support a factual finding that the appellants retained a right to control the demolition work. The work obligations originally assumed by Carrow and McGee were later assumed by Spradling and Hemphill and ultimately by Williams. All except Williams by written contract agreed to indemnify the railroad against all damage claims arising out of their work. The contract, as shown by the provisions previously set out, permitted entry on the railroad premises only when and where authorized and required compliance with the railroad rules. Williams testified that Superintendent Davis discussed the work with him on the job site two or three times a day and gave him directions. It also appears that all appellants were given advance notice of the contemplated fire. It is apparent that all parties realized that the proposed extensive fire was dangerous. Williams procured the presence of two city fire engines and Superintendent Davis was present at the scene of the fire with seven fire hoses operated by railroad men. A jury could well infer that the railroad had reserved a right to control such a hazardous operation upon their premises and that Superintendent Davis was on the premises at the time of the fire for the purpose of supervising and controlling the operation. The record reflects that Williams was not financially responsible and that he had disclaimed responsibility for anything that happened. There is little to show that he had developed any expertise in handling a fire of this size. The jury could well infer that the appellants did not entrust such a dangerous operation exclusively to Williams without reserving a right of control.
 
 
 38
 No objection was made to the instructions submitting the issue of Williams' relationship to the appellants to the jury. The court committed no error in overruling the motions for directed verdict and for judgment n. o. v.[2]
 
 
 39
 Lastly, appellants assert that plaintiff has released Williams from liability and that since appellants' liability is predicated upon respondeat superior liability for Williams' acts, the release of Williams releases all appellants. We do not consider the release issue to be properly before us for review. Release is an affirmative defense. Rule 8(c), Fed.R.Civ.P., requires such defense to be pleaded. Luria Brothers & Co. v. United States, 177 Ct.Cl. 676, 369 F.2d 701-710; Seaboard Surety Co. v. Harbison, 7 Cir., 304 F.2d 247, 251.
 
 
 40
 The release defense was not pleaded nor was it made a ground of the motions for acquittal. The briefs and the appendix point to no request for an instruction upon the release issue, nor to any exception taken to the failure to instruct upon release. Thus the release issue cannot fairly be said to have been tried by consent.
 
 
 41
 Ordinarily issues not properly presented or raised in the trial court cannot be considered upon appeal. Ralston Purina Co. v. Parsons Feed & Farm Supply, 8 Cir., 364 F.2d 57, 59, 60; Ford v. Boeger, 8 Cir., 362 F.2d 999, 1006, 1007.
 
 
 42
 In any event, there is no substantial evidence to support a finding that plaintiff released Williams. Williams made the conclusory statement that his attorney told him that there was an agreement for release and later testified, "He said he had an agreement. That's all I know, sir." No release was produced or offered in evidence at the trial nor is there any proof as to the contents of the asserted release or the consideration, if any, therefor.
 
 
 43
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 John Hemphill, Jr., was made a party defendant but the action against him was dismissed by plaintiff
 
 
 [2]
 We need not in view of this holding reach the additional issue raised by the plaintiff that the appellants were responsible for their own negligent action in setting and permitting the huge fire apart from any respondeat superior liability. The pleadings are broad enough to raise the issue of individual negligence on the part of the appellants and such issue is raised in plaintiff's brief