BALZER, Respondent, vs. CALDWELL and another, imp., Appellants.

*November 6, 1935—February 4, 1936.*

For the appellants there were briefs by *Bitker, Tierney & Puchner* of Milwaukee, and oral argument by *Joseph E. Tierney.*

For the respondent there was a brief by *Louis L. Weiss,* attorney, and *Raymond J. Cannon* and *John L. Newman* of counsel, all of Milwaukee, and oral argument by *Mr. Cannon.*

The following opinion was filed December 3, 1935:

WICKHEM, J. The accident occurred on September 25, 1932, immediately in front of a garage located on the north side of Wells street, between Nineteenth and Twentieth streets, in the city of Milwaukee. There is a double street-car track on Wells street which passes in front of the garage in question. At about 2:30 in the morning of September 25th, the defendant Caldwell was driving his car in a westerly direction on Wells street, the wheels straddling the north rail of the westbound track. With his car in this position, the right-hand side of his car was fourteen feet three inches from the north curb of Wells street. As he approached, he observed the plaintiff walking in a westerly direction on the sidewalk and approaching the driveway.

He turned north preparatory to entering the driveway and garage but stopped about three or four feet south of the north curb for the purpose of allowing plaintiff to pass. The defendant Shaulis was driving his car to the rear of Caldwell and in the same direction. It is his claim that when Caldwell attempted to turn, which he describes as being a sudden turn, he was driving with the right side of his car some three or four feet south of the north curb; that the sudden invasion of his path by Caldwell compelled him to turn to the right to avoid striking Caldwell. He ran up on the sidewalk and proceeded west past the driveway, striking the plaintiff and crushing him against an iron post.

The first question of the special verdict required the jury to find whether, just before the turn by Caldwell to the right, each driver was operating his automobile within a separate traffic lane. This question was answered in the affirmative by the jury. The second question required the jury to find whether the failure of Caldwell to first ascertain before deviating from the traffic lane in which he had been operating that such movement could be made with safety to other vehicles, was a cause of plaintiff's injury. This question was answered in the affirmative. It was further found that Caldwell was negligent in failing to keep a proper lookout, and in failing to give proper warning of his intention to turn to the right. These items of negligence were all found to have been causes of plaintiff's injuries. Shaulis was found negligent with respect to the distance at which he followed the Caldwell machine, but was exonerated from negligence with respect to the condition of his brakes. Plaintiff's damages were assessed at $12,000, and medical expenses were fixed by the court at $731.

The first assignment of error is that the evidence does not sustain the verdict. This assignment raises the question as to the effect to be given the testimony of a police officer, who

was on the scene within a minute or so after the accident, and who testified as to the location of two tire marks. Except for his testimony, there is an issue of fact. The defendant Shaulis claims that he was proceeding three or four feet from the north curb; that he was traveling in a completely separate traffic lane to the right of that in which Caldwell was driving; and that the provisions of sec. 85.16 (2), Stats., are applicable. Sec. 85.16 (2) provides:

"The operator of a vehicle upon a roadway shall not deviate from the traffic lane in which he is operating without first ascertaining that such movement can be made with safety to other vehicles approaching from the rear."

The testimony of Officer Merwin was to the effect that he discovered upon the pavement two well-defined tire marks swinging into the sidewalk some thirteen feet east of the driveway, and which he claims were admitted by Shaulis to be the marks of the Hudson car. He took immediate measurements, and claims to have ascertained that the right wheels of the Shaulis car were eleven feet six inches from the north curb when they were running parallel to the curb. Since the Hudson car driven by Shaulis was six feet one inch wide, this would mean that the left side of the car was seventeen feet seven inches from the north curb. Assuming the Caldwell car to be straddling the north rail, this would mean that the right side of the Shaulis car was two feet nine inches to the north of the right side of the Caldwell car. Thus, while the Shaulis car was far enough to the north of the Caldwell car to have its path obstructed by a sudden stop or a turn by the Caldwell car to the right, it is the contention of appellants that the cars were in the same traffic lane, and that sec. 85.16 (2), Stats., is not applicable.

Sub. (34) of sec. 85.10, Stats., defines traffic lane as that portion of a roadway paralleling a center line of a roadway having a width of not less than seven feet and not more than

ten feet, whether or not such portion is indicated by marks or markers. It is argued that since the street was fifty feet in width, and had three full ten-foot traffic lanes, the two cars were completely in the second traffic lane, counting from the north curb, and that there was no deviation from this lane to the obstruction of a vehicle in another lane.

In the view that the court takes on the law applicable to this situation, it is unnecessary to examine the question whether the officer's testimony must be taken as a verity. We assume, for the purposes of this determination, that it must be so taken, and that the right side of the Shaulis car was actually eleven feet six inches from the north curb during the time it was traveling parallel with the center line of the street. Assuming these facts, both cars were in the same traffic lane if the lanes be treated as ten feet in width. If the lanes be treated as seven feet wide, the Shaulis car was driving mostly in the second but partly in the third lane from the north curb. Caldwell was entirely in the third lane. Thus, if the lanes be treated as seven feet in width, Caldwell deviated from his lane and obstructed a car approaching from the rear. It would be immaterial that the Shaulis car was partly in the third lane, since he was in a position to the right of the Caldwell car and in which he would find his path cut off by a sudden turn.

The foregoing indicates some of the difficulties confronting the court in attempting to apply sec. 85.16 (2), Stats., in view of the definition of lane contained in sec. 85.10 (34). At least in cases where there are no marked lanes, the principal difficulty arises out of the fact that an unmarked lane may be as wide as ten feet and must be as wide as seven feet. If a street measures precisely fourteen feet from curb to center, it may be possible to determine that it contains two traffic lanes of seven feet each. If it is precisely twenty feet wide from curb to center, it may be concluded that it con-

tains two traffic lanes of ten feet each, since it has more than enough width for two seven-foot lanes, but not enough for a third. If, however, the distance between the center and the curb is precisely twenty-one feet, are there then three lanes of seven feet each or two lanes of ten feet each, with an overrun perhaps to be added to an equal overrun on the other side of the center, to constitute another lane of travel? Applied to the present situation, by what standard is this court to determine, in the absence of markings, whether the Caldwell car was traveling in the third of three seven-foot lanes, or the second of two ten-foot lanes? Certainly the answer to this problem is not easily arrived at. At least, in the absence of markings, there would appear to be no obligation on the part of a driver to keep precisely within the limits of one of these unmarked traffic lanes, on penalty of being found guilty of negligence if he actually occupied two traffic lanes. Nor can it have been intended that the liability of a person making a deviation from the path along which he was traveling, thereby obstructing the path of one approaching from the rear and at his right, should depend solely upon whether in so doing he had crossed the unmarked and invisible limits of a traffic zone.

Whatever effect the statute may have in creating liability, and this we need not determine here, it does not in any way cut down or limit such liability as would exist independently of its enactment. Upon a highway which is large enough for two cars to travel different paths, going in the same direction, and where it is lawful for one car to choose a path lying nearer the curb than that of the leading car, there is a duty on the part of the leading car not to obstruct the path of a car approaching from the rear by a sudden turn to the right. That is precisely what happened in this case, taking the jury's findings as verities. A substantial portion of the Hudson car, even upon the testimony of the officer, was to

the right of the Caldwell car. It was in a position where a sudden turn to the right by Caldwell would obstruct its path, and this is what the jury found to have happened. In this view of the case, the jury's answer to the first question was immaterial, but the answers to the other questions, in which it was found that the deviation made by Caldwell was a cause of plaintiff's injury, and that Caldwell negligently failed to keep a proper lookout, and to give proper warning of his intention to turn, sufficiently support the judgment.

Appellants contend that the appeal is disposed of adversely to plaintiff by *Young v. Nunn, Bush & Weldon Shoe Co.* 212 Wis. 403, 249 N. W. 278. In that case a truck driver, occupying about the same position in the road as Caldwell, swung slightly to his right to avoid another truck at the intersection. The other defendant, who was proceeding at an unlawful rate of speed and attempting to pass the truck upon the right, found himself pocketed, and this court held that the truck driver, in turning to the right without signal and without looking, did not violate any duty owed to the overtaking driver. That is quite a different situation. In the *Young Case* the truck driver did not diminish his speed, and the only person whom he could imperil would be a driver who at that moment was attempting unlawfully to pass him upon the right at an excessive rate of speed. It was simply held that he was not bound to anticipate such conduct. It is quite another thing to say that the driver of the vehicle to the left owes no duty to the driver approaching from the rear and to his right to avoid such sudden turns as will obstruct the pathway of the latter.

Nor does *Ramsay v. Biemert,* 216 Wis. 631, 258 N. W. 355, govern the situation here presented. In that case the two cars were traveling not merely in the same lane, but in the same path. The jury found that the leading car did not negligently slow down, and the court held that if it did not, a

turn to the right could not operate to cause the collision, since no part of the path of the rear car lay to the right of the car ahead. In other words, since the path of the rear car was not to the right of the leading car, it could not be obstructed by a right turn. It could only be affected by a sudden or abrupt stop.

It is next contended that the negligence of Caldwell, if any existed, was not the proximate cause of plaintiff's injury. It is claimed that the negligence of Shaulis in driving too close to the Caldwell car is an intervening cause to which plaintiff's injury is wholly attributable. *Rusczck v. Chicago & N. W. R. Co.* 191 Wis. 130, 210 N. W. 361. We deem this contention to be unsound. Upon the facts presented, this appears to us to be an ordinary case of the concurring negligence of two persons operating proximately to cause injury to a third.

This court in *Felix v. Soderberg,* 207 Wis. 76, 240 N. W. 836, ruled adversely to appellants' contention upon a state of facts far more favorable to that contention than are present here. In that case, Soderberg drove his car against that of plaintiff, which was parked upon the street. The Soderberg car came to a standstill diagonally in the street. Fijalkiewicz negligently drove his car into the Soderberg car, forcing it forward in such a manner as to hit the plaintiff. It was there contended by Soderberg that the negligence of Fijalkiewicz was an intervening cause. This contention was rejected. Nor does the situation here fall within cases cited in *Moen v. Madison Rys. Co.* 208 Wis. 381, 243 N. W. 503, in which the negligence of one person does no more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person. Just as in the *Moen Case,* the act of Caldwell was negligent and substantially caused the injury by compelling Shaulis to swerve from his course.

Several procedural errors are assigned. The first is that the court erred in refusing to allow one Burke, an engineer who had prepared a large drawing to scale, showing the objects in the vicinity of the accident, to transpose onto this map the officer's drawing as to the tire marks and path of defendant Shaulis' car. The court rightly excluded this upon the ground that it would constitute an interpretation of other evidence by the witness.

The second is that the court failed to advise the jury that he had found Shaulis guilty of negligence as a matter of law with respect to speed, lookout, and control. The contention is without merit. While the court in its discretion may submit questions so as to cover all facts vital to the cause of action or defense, the preferred practice is to submit only controverted issues of fact. *Baumann v. C. Reiss Coal Co.* 118 Wis. 330, 95 N. W. 139. Having done so, the duty of the jury is to answer these questions without reference to the court's ruling on other facts. There is no occasion for the court to advise them of such rulings.

Third, errors in instructions. Appellants requested the court to instruct: "That the testimony of witnesses who have measured distances and made memoranda thereof is entitled to greater weight than evidence of witnesses who testify from recollection based on estimates of such distances." There was no error here. The court gave this instruction in substance. The only claim is that the court qualified it by stating that this instruction did not apply to any conflict in the testimony as to whether marks on the pavement were produced by any particular machine. The instruction states the law correctly and was not error.

Fourth, error is assigned because the court refused an instruction embodying the doctrine of *Young v. Nunn, Bush & Weldon Shoe Co., supra.* What has heretofore been said disposes of this contention.

Fifth, it is claimed that the court erred in permitting counsel in opening statement to inform the jury which counsel represented the defendant Caldwell and his insurer. It is claimed that this was prejudicial because it necessarily disclosed to the jury that Caldwell was insured and that Shaulis was not. Since the jury found both defendants guilty of negligence, prejudice to Caldwell and his insurer certainly does not affirmatively appear. However, the contention itself is without merit. The defendant insurance company was properly made a party, and its presence in the action and the identity of its counsel could properly be disclosed to the jury in an opening statement.

The final contention is that the damages are excessive. As a result of the accident, plaintiff suffered a crushing injury to the left leg which destroyed all the soft tissues, muscles, and skin, and produced multiple fractures of the bone. The knee joint was crushed entirely. Plaintiff also sustained multiple abrasions and lacerations to his face and scalp and contusions to the lower part of his body. It was necessary to amputate the left leg about seven or eight inches above the knee. He was confined to the hospital for a period of three months. After he was discharged from the hospital, he remained in bed for four or five months. He suffered continuous and severe pain during this period. There is testimony that he still suffers pain in the leg. At the time of the accident, plaintiff was sixty-four years of age, and his average income for the past five years had been $966 a year. He had an expectancy of ten years at the time of the trial. His medical expenses were $731. Under all the circumstances, we think the award not excessive. There might be some difficulty in sustaining the award solely upon the basis of loss of earning power. When, however, due allowance is made for the very substantial portion of the award that may properly be attributed to pain and suffering, it is clear to us that the balance would not be more than will compensate plaintiff for his future loss of earnings and the

inconvenience and suffering occasioned by his crippled condition. *Marsh Wood Products Co. v. Babcock & Wilcox Co.* 207 Wis. 209, 240 N. W. 392.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J., dissents.

A motion for a rehearing was denied, with $25 costs, on February 4, 1936.