**Edwin R. LINNEMAN and Emilie Linneman, Appellants,**

v.

**Melvin Gerald FREESE, Respondent.**

No. 49150.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1962.

W. F. Daniels, Fayette, for appellants.

Hampton Tisdale, Boonville, Clyde E. Rogers, Fayette, for respondent.

COIL, Commissioner.

Mr. and Mrs. Edwin Linneman sought $25,000 as damages for the wrongful death of their son Harlan, 19, who died of injuries allegedly caused by the negligence of defendant, Melvin Freese. There was a defendant's verdict and plaintiffs have appealed from the ensuing judgment. They contend the court erred in giving contributory negligence instruction D–3 and in admitting evidence of the speed of plaintiffs' decedent's automobile at times and places prior to and allegedly remote from the scene of the accident.

Defendant denies that the trial court erred in either respect and contends also that decisive in any event is the fact that the trial court should have directed a verdict for defendant for the reason that plaintiffs' evidence failed to show that any negligence of defendant proximately caused or, contributed to cause injury and death to plaintiffs' decedent.

We are of the view that for the reasons which will appear defendant's contention in that respect must be sustained.

Plaintiffs' verdict-directing instruction submitted that if defendant was negligent in failing to exercise the highest degree of care in keeping a lookout, in keeping his automobile under control and in operating his automobile with defective brakes, and if such negligence caused Linneman's injury and death and Linneman was not negligent as set forth in the contributory negligence instruction, the jury would find for plaintiffs.

There can be no doubt that a jury reasonably could have found from the evidence that Freese was negligent in the respects submitted, but we are unable to find in the record any evidence from which the jury reasonably could have found that any of that negligence or any other act or omission on Freese's part proximately caused or contributed to cause Linneman's injury and death.

■ The evidence as supplied in an abbreviated transcript consisted of the testimony of two of plaintiffs' witnesses, viz., the defendant and a highway patrolman, and two photographs of automobiles. The evidence tended to show that on July 15, 1958, about 10 p. m., defendant Melvin Freese, driving one automobile, and Harlan Linneman, driving another, left Salisbury and thereafter turned south on Highway 5. Originally Freese was following Linneman, but about a mile from the place of the subsequent accident Freese passed Linneman. Both cars were then traveling 75–80 miles per hour. As the Freese car topped the crest of the hill "right before the accident happened," it was going 70 m. p. h. and the Linneman car was "right behind." Thereafter Freese came upon a southbound car driven by Mr. Freeman. At the time, a northbound car prevented Freese from immediately passing the Freeman car. Freese attempted to slow but was unable to do so sufficiently and as he swerved to his left in an attempt to go around the Freeman car, his right front fender hit Freeman's left rear fender and Freese continued on for a distance of 500 feet and came to a stop after he had returned to the southbound lane of the highway. At the time of the collision Freese was going 60 m. p. h. and the Linneman car was right behind him. After the impact the Freeman car apparently proceeded in the southbound lane for 51 feet when the car driven by decedent ran into its rear. When a highway patrolman arrived at the accident scene, he found the Freeman car in a ditch on the west side of the road 57 feet from the point of the second impact and lying on its left side. He found the Linneman boy's body lying 180 feet from the second impact point on the east edge of the highway and his car another 100 feet to the south in a field on the east side of the highway. There was no evidence as to the kind of pavement, condition of the road surface, the width thereof, or the weather.

There was no evidence that the northbound traffic lane was in any way obstructed at the time the Linneman car ran into the rear of the Freeman car. On that subject, Freese testified that after his right front fender struck the left rear fender of the Freeman car, his (the Freese) car skidded to the left side of the road, that he continued on without application of brakes or gas, fighting the steering wheel to the right to prevent his car from going into the ditch on the left, and proceeded on until his car had returned to the southbound lane where he came to a stop some 500 feet south of the impact point. None of his testimony on the subject indicated or supported an inference that there was any period of time when he was blocking the northbound lane in such a way as to prevent the Linneman car from using that lane for the purpose of passing the Freeman car.

The only item of testimony in the record which tends to imply that the impact between the Freese car and the Freeman car had anything to do with the subsequent collision between plaintiffs' decedent's car and the Freeman car was contained in the testimony of plaintiffs' witness, a highway pa-

trolman, who said that defendant told him at the scene how the accident happened by stating, "I was coming down the draw, I saw his lights and there was a car coming. After I got by, I swung out, but I must have been too close and hit him. My brakes weren't as good as they should have been. I must have spun him around so the other car hit him." If the last sentence above might, under any circumstances, constitute evidence of causal connection between Freese's negligence and Linneman's injuries, its evidentiary value is destroyed when the testimony of Freese and other testimony of the patrolman is taken into account. At the trial these questions were asked Freese and these answers given: "Q. When you hit the Freeman car, what happened to it? A. My car swerved to the east side of the road. Q. It knocked the Freeman car around, did it spin it around? A. Not that I know of, Sir. Q. Well, do you know? A. No, Sir." Freese also testified that when he collided with it, the Freeman car was not "pushed one way or the other"; that the Freeman car was not turned over by the impact of his (Freese's) car hitting the Freeman car; that all the debris was on the right side of the road, i. e., in the southbound lane of the highway; that he, Freese, did not know what the Freeman car did after he hit it. The highway patrolman testified that there were two separate piles of debris, but both of them were in the southbound lane west of the center line; that there were no skid marks prior to either impact point, and that while he, the patrolman, did not witness the accident and thus had no personal knowledge of what the Freeman car did after it was hit the first time, there was nothing, based on his examination of the scene of the accident, to show that the Freeman car had been spun around; that there was no evidence to show that the Freeman car had ever crossed the center line; he recalled no evidence to indicate that the Freeman car ever went out of control as the result of being struck by the Freese car; and that the Freeman car after the first impact trav-

eled 51 feet directly south in the southbound traffic lane.

A photograph of the Linneman car indicates extensive damage to the front, especially the right half thereof; and a photograph of the Freeman car shows terrific damage to its entire rear (including the back seat), and especially heavy damage to all but the right rear fender. The reasonable conclusion from that photographic evidence is that the center right front of the Linneman car struck the center of the rear of the Freeman car with great force.

There was no evidence that the collision between defendant's car and the Freeman car damaged Freeman's lights and defendant said that he saw the Freeman car's lights prior to the first impact.

■ It seems to us that only by resorting to speculation and conjecture outside of and beyond the scope of the evidence may it be found that any negligence of Freese (however negligent he was in colliding with the Freeman car) proximately caused or contributed to cause any injury to Linneman. No fact essential to liability, including, of course, the essential fact of proximate cause, may be found or inferred in the absence of a substantial evidentiary base therefor and, of course, the finding of an essential fact may not "rest upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence." Probst v. Seyer, Mo., 353 S.W.2d 798, 802[1–3]. Plaintiffs failed to adduce evidence from which a jury reasonably could have found that defendant's negligence was a proximate cause of injury to plaintiffs' decedent, and therefore the judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.