KEWANEE OIL COMPANY, a corporation,
Plaintiff-Appellant,

v.

REMMERT–WERNER, INC., et al.,
Respondents.

No. 34909.

Missouri Court of Appeals,
St. Louis District,
Division 2.

Feb. 13, 1974.

Motion for Rehearing or Transfer Denied
March 8, 1974.

Application to Transfer Denied
May 13, 1974.

Padberg, Raack, McSweeney & Slater, John J. Inkley, Jr., St. Louis, for plaintiff-appellant.

Evans & Dixon, Ralph C. Kleinschmidt, St. Louis, for respondents.

CLEMENS, Acting Presiding Judge.

Action by plaintiff Kewanee Oil Company for $132,000 damages to their jet plane. The damage was allegedly caused by defendant Remmert-Werner in the negligent repair and maintenance of a landing gear and warning device on the airplane. In the alternative, plaintiff seeks damages from defendant North American Rockwell Corporation for the faulty manufacture of the landing gear. Plaintiff appeals from a verdict and judgment for defendants.

Plaintiff contends the trial court erred in giving defendants' contributory negligence instructions by assuming disputed facts and also erred in permitting the jury to inspect defendants' Exhibits B and G. These, in order.

On April 14, 1967 the retractable landing gear under the right wing of plaintiff's airplane collapsed on landing at Chicago's O'Hare Field airport. The stipulated cause of the malfunction in the landing gear was the failure of the "downlock pin" to drop down and lock the gear in position when it was extending for landing. As a result, the landing gear was held in position only by hydraulic pressure which the weight of the aircraft overcame shortly after touchdown. In the ensuing collision the airplane was damaged to the extent of $132,000.

The airplane was equipped with a warning device in the cockpit which, when functioning properly, alerted the pilot to any malfunction in the landing gear. The device consisted of three green lights, a red light and a warning horn. During flight the lights remain off when the landing gears are retracted. When the pilot extends the gears for landing, the red light comes on and remains on until each gear is fully extended and locked into place; a green light will then appear for each gear that is properly locked in position. In theory, malfunction in the gears will be brought to the pilot's attention when any of the three green lights do not appear, the red light remains on or the warning horn sounds. In the event the pilot does not receive the proper gear-safe indication before landing (indicated by three green lights, no red light and no warning horn) the pilot may use a reset button and safety lanyard to drive the downlock pin into position to permit the plane to land safely.

Defendant Remmert-Werner inspected the airplane in Trenton, New Jersey one week before the accident, adjusting a switch housed in the landing gear assembly which activates the gear-safe warning device. Plaintiff asserts that because of this adjustment its pilot received a gear-safe indication when the gears were extended for landing in Chicago even though the downlock pin was not then properly engaged and the gear was not locked in position for landing.

Defendants do not disagree with plaintiff's assertions about the defect but attack plaintiff's claim the pilot justifiably relied on the gear-safe indication. Specifically, defendants contend their adjustment caused the green light connected to the right landing gear to remain on continously during flight, which should have alerted a reasonably prudent pilot to the fact there was a malfunction in the warning system so as to render it unreliable. Defendants claim therefore that a pilot aware his gear-safe indicator was not reliable should have resorted to the fail-safe or backup procedures available to insure that the downlock pins were properly in place.

To corroborate their claim, defendants introduced into evidence the results of a test made during post-accident investigation. The plane was placed on jacks with the gears fully extended and locked into place. When the downlock pin on the *left* landing gear was disengaged, the respec-

tive green light went out and the warning device sounded. When the *right* downlock pin was disengaged however the system continued to give a gear-safe indication;[1] that is, the green light remained on and the warning device did not sound. From this, defendants' expert witness, a St. Louis-based employee of defendant North American who had performed the test, concluded the green light must have been on continously during flight. The same witness also testified that in a telephone conversation with plaintiff's pilot immediately before the flight to Chicago, the pilot stated he had been receiving a solid green indication for the right landing gear during flight. The witness said he then told the pilot that the switch was improperly adjusted, he would not receive a reliable signal and recommended the plane be put on jacks and the switch be readjusted. Plaintiff's pilot and co-pilot denied receiving a constant green light but admitted noticing it flickered sporatically, claiming this was not an abnormal occurrence.

■ The court gave defendants' contributory negligence instructions. These were identical except for the defendants' names which are omitted: "Your verdict must be for defendant . . . whether or not defendant was . . . negligent, *if you believe*: First, *plaintiff's pilot knew*, or by the use of ordinary care could have known, *that the light signal* provided to show whether the right main landing gear was locked down, was *functioning improperly and therefore unreliable*, and Second, means were available to plaintiff's pilot to force the landing gear into a locked position, but plaintiff's pilot failed to use such means, and Third, such conduct of *plaintiff's pilot was negligent,* and Fourth, such negligence of plaintiff's pilot directly caused or directly contributed to cause any damage plaintiff may have sustained." (Our emphasis). In their brief plaintiffs contend the instructions "assume certain facts which were in dispute . . ." By its generality this point relied on fails to comply with Rule 84.04(d), V.A.M.R.,

which condemns abstract statements and requires a concise statement of *"wherein and why"* the court erred. Compare Anderson v. Welty Brothers Sales Pavilion, 334 S.W.2d 132 [13] (Mo.App.1960); Sides v. Contemporary Homes, Inc., 311 S.W.2d 117 [10] (Mo.App.1958); and Lewis v. Watkins, 297 S.W.2d 595 [3–4] (Mo.App.1957). Since the argument section of plaintiff's brief does show the required specificity, we elect to rule the point on the merits.

We consider whether the contributory negligence instructions assumed contested facts and look to the challenged portion of the contributory negligence instruction. It directed a verdict for defendants if the jury believed plaintiff's pilot knew the right landing gear signal "was functioning improperly and therefore unreliable" and negligently failed to take available corrective action.

■ There are two ways to approach the problem presented by plaintiff's challenge. First, the entire issue can be avoided by holding that the unreliability of the gear-safe indication was not an issue in the case or even a controverted fact. Plaintiff argues that the manner in which the contributory negligence instructions were phrased required the jury to find the signal unreliable once a malfunction was proved, thus constituting an improper assumption of facts. The fallacy of plaintiff's argument becomes apparent, however, with the realization that the issue presented by the instructions is not whether the gear-safe indication was reliable. As defendants point out in their brief, there is no question the signal received was unreliable for it in fact did *not* alert the pilot to the malfunction in the downlock pin apparatus. The crucial issue presented by the instructions was whether a reasonably prudent pilot should have known under the circumstances that the signal was not reliable. Read in this way, the instructions clearly put forth this issue in a manner unlikely to confuse the jury and which would not improperly assume controverted facts.

 The second approach is to treat the instructions in the manner presented by the plaintiff, i.e., that the instructions erroneously assumed, rather than hypothesized, that the signal was unreliable. The key to determining the sufficiency of an instruction under attack for assuming facts is whether in its entirety the instruction would tend to confuse the jury. In resolving this we assume the jury was composed of ordinarily intelligent laymen and should not disapprove an instruction unless a close scrutiny thereof demonstrates that it is calculated to lead the jury to believe disputed facts are to be taken as uncontroverted. Bidleman v. Morrison Motor Freight, 273 S.W.2d 745 (Mo.App.1955).

In Pierce v. St. Louis Public Service Co., 380 S.W.2d 943 (Mo.App.1964), this court stated that it is unnecessary "to sprinkle an instruction with 'if you so find' in order to avoid the charge of assumption of facts . . . if the instruction in its beginning . . . plainly requires the jury to find the hypothesized facts from the evidence . . ." Both contributory negligence instructions are prefaced with the phrase "if you believe." In Price v. Seidler, 408 S.W.2d 815 (Mo.1966), the court found that phrase sufficient to hypothesize the facts that followed in the instruction without confusing the jury.

Here plaintiff has taken the phrase ". . . functioning improperly and therefore unreliable . . ." and read it out of context, giving the impression that the instruction mandated a finding of unreliability once the existence of a malfunction was proved. To the contrary, a reasonable interpretation of the instructions in their entirety permits the jury to find for the defendant only after the separate but concomitant findings that the pilot was aware of a malfunction in the warning system and also that the malfunction was of a nature that would make the system unreliable. Viewed in this manner Bledsoe v. Northside Supply and Development Co., 429 S.W.2d 727 (Mo.1928) cited by plaintiff is clearly distinguishable in that there the instruction plainly invaded the province of the jury by requiring the finding of a controverted fact once an initial fact was found to exist. We find no reversible error in giving plaintiff's contributory negligence instructions.

Plaintiff claims the trial court erred in yielding to the jury's request, while deliberating, to examine defendant's exhibits B and G. We note that in closing argument plaintiff's counsel told the jurors they were entitled to call for and study exhibits and urged them to do so. This appears to be invited error but we do not rely on that.

Exhibit B was identified by Keith W. Kean, a pilot and technical designer for defendant Rockwell, as the three-page written summary of a phone call from Mr. A. R. McMahon, defendant Rockwell's "technical representative," relating details of the aircraft inspection. Mr. McMahon had previously testified about this inspection. Plaintiff now contends the trial court erred in letting the jury see Exhibit B since it contained "conclusions, self-serving statements and third-party hearsay."

Exhibit G was a formal accident report written by Mr. McMahon concerning matters he had already testified to about the aircraft inspection. Plaintiff now contends this is an error on the specific ground the exhibit was never introduced in evidence and the general ground it contained "prejudicial matters."

 Defendants contend it was not error to allow the jury to inspect Exhibits B and G since the exhibits were cumulative of oral testimony of witness McMahon on both direct and cross examination. If so, the alleged error was harmless. Bennette v. Hader, 337 Mo. 977, 87 S.W.2d 413 [7] (1935); Stanziale v. Musick, 370 S.W.2d 261 [9] (Mo.1962). To determine this fully it would require us to make a detailed comparison of Mr. McMahon's testimony (36 pages in the transcript) and each of the detailed findings in Exhibits B and G.

Appellant has filed neither of the challenged exhibits as required by Rules 81.-

14(a) and 81.15. In such a case we are told "where, as here, exhibits are omitted from the transcript and are not filed with the appellate court (Rule 82.15) [now Rule 81.15], the intendment and content of such exhibits will be taken as favorable to the trial court's ruling and as unfavorable to appellant." Lange v. Baker, 377 S.W.2d 5 [4] (Mo.App.1964).

■ Nonetheless, we have examined the parties' briefs to compare the asserted contents of Exhibits B and G with McMahon's transcript testimony. And, as in *Lange*, supra, this point was before the trial court on specific objections in plaintiff's after-trial motion. By the denial thereof the court necessarily ruled that showing Exhibits B and G to the jury, even if error, was not prejudicial. Appellant has not demonstrated error in that ruling. Compare Jefferson v. Biggar, 416 S.W.2d 933 [3] (Mo.1967). We deny plaintiff's points as to Exhibits B and G.

Judgment affirmed.

McMILLIAN, and GUNN, JJ., concur.