James Edward WELCH and Charlotte A. Welch, Plaintiffs-Appellants,

v.

Myron Edward HYATT, Defendant-Respondent.

No. 60727.

Supreme Court of Missouri, En Banc.

March 13, 1979.

Appellants' Motion for Rehearing Denied April 10, 1979.

W. Raleigh Gough, Butler, George T. Sweitzer, Jr., Harrisonville, Edward J. Murphy, Butler, for plaintiffs-appellants.

Robert W. Spangler, Robert B. Reeser, Jr., Crouch, Crouch, Spangler & Douglas, Harrisonville, for defendant-respondent.

SIMEONE, Judge.

This is an appeal by the plaintiffs-appellants James and Charlotte Welch from a judgment entered on April 3, 1975, upon a jury verdict by the circuit court of Cass County in favor of the defendant-respondent, Myron Edward Hyatt on the plaintiffs' claim for damages for personal injuries and loss of services arising out of an automobile collision. The Court of Appeals, Western District affirmed the judgment. Upon motion[1] filed by plaintiffs we granted transfer to this court and now decide the case as an original appeal, under the provisions of Art. V, § 10, Mo.Const. We adopt portions of the court of appeals opinion without quotation marks.

This cause arises from an automobile collision between a 1949 Chevrolet "pickup" truck driven by plaintiff James Welch and a 1969 Chevrolet driven by Myron Hyatt. Trial began April 1, 1975. The collision

1. The motion contended that the cause be transferred because (1) the court of appeals opinion required the jury to find rather than to assume a controverted fact in Instruction No. 4, (2) in so concluding violated Rules 70.01 and 70.02 and the Committee's Comment to MAI 1.02 that where a ground of negligence consists of several elements they must be submitted conjunctively, (3) MAI 17.06 assumes that a "turn" was being made so that the instruction should be modified to hypothesize the fact of a turn by a separate clause which Instruction No. 4 does not do and (4) the opinion of the court of appeals is in conflict with prior decisions: *Bledsoe v. Northside Supply and Development Co.*, 429 S.W.2d 727, 730 (Mo.1968); *Highfill v. Brown*, 320 S.W.2d 493, 496 (Mo.1959) (failing to submit the facts to base a finding that plaintiff intended to turn left); *Melber v. Yourtee*, 203 S.W.2d 727, 730 (Mo.1947); *Day v. Mayberry*, 421 S.W.2d 34, 40–41 (Mo.App.1967); *Hawkeye Security Ins. Co. v. Thomas Grain Fum. Co.*, 407 S.W.2d 622, 630 (Mo.App.1966); and *Hengelsberg v. Cushing*, 51 S.W.2d 187, 189 (Mo.App.1932).

occurred on October 30, 1971 on Highway M–2 in Cass County .6 of a mile east of Route J and six to eight miles west of Harrisonville, Mo. The collision occurred when the eastbound Welch pickup truck was struck from the rear by the Hyatt Chevrolet. At the scene of the collision Highway M–2 runs "in a general easterly and westerly direction" or "basically east and west" and at the scene the highway is fairly level and straight but there is a curve in the road approximately 600 feet west of the point of collision. The highway is 21 feet wide with 12 foot shoulders. At the scene of the collision a "farm driveway" proceeds north from the highway to a trailer house on the north side of the highway where some junk pickup trucks rested. The trailer house was occupied by "Jack" who was known to Mr. Welch. The collision occurred near the driveway.

The essential question is whether at the time of the collision, Welch was in the process of a left-hand turn onto the driveway and, if so, whether his failure to signal that movement was contributorily negligent.

While the evidence is contradictory, the jury could reasonably find the following.

On October 30, 1971, Mr. Welch was driving an old one-half ton pickup truck which he had borrowed from his brother two or three weeks before. "[T]he body wasn't the best in the world." The truck had "two cracked door glasses." "They were busted up pretty bad." There were no electric signals on the truck and only one brake light (the right) operated. On that date shortly before noon, Welch decided to drive to Bob's Salvage Yard near Harrisonville to "try to replace [the] two door glasses." In the truck with him were his two-year old son and his fifteen-year old brother-in-law. Mr. Welch testified that he was driving on the side of the road in a straight line and "never turned to the left or to the right" nor did he increase or decrease his speed.

"Well, I was driving down the—east toward Harrisonville on Number 2, on my side of the road, and my little boy was standing up so my brother-in-law reached to get him, you know, took him back around and set him on his lap and driving along there and all of a sudden I just got rammed."

He admitted that the collision occurred near the farm driveway and that he knew that "Jack" lived there and had some junk vehicles, that he had been to the trailer house before but denied that he was going to the trailer house to see him. Hence, he indicated he had no intention to turn—"Well, where you going to go to that trailer house to see that man [Jack] about some parts for your pickup at the time of the accident? . . . No, I wasn't." Welch testified that at the time he was struck his truck was "probably about a foot from the center line or so" on the south side of the highway. After the accident, Welch, while not unconscious, could not remember anything until he was in the doctor's office some time later.[2] He received injuries which are not the subject of dispute in this proceeding.

The defendant-Hyatt's version of the collision was in marked contrast to that of Mr. Welch. Hyatt was driving the Chevrolet and his wife Marie was sitting in the passenger seat reading a book. It was his testimony that he was attempting to go to a farm "[t]o look for a bull." He proceeded west on highway 2, went past the farm, asked directions, turned around and proceeded east. He was driving about 55–60 m. p. h. After he made the curve, he became conscious of the pickup truck ahead. He continued to observe the truck. The truck was traveling at about 45 m. p. h. and as the "truck was headed down the highway to the east, it had a light that come on and went off, come on and went off, and I apparently thought that he was probably going to pull off to pick up his mail or pull to the right so I pulled to the passing [north] lane of the highway." The right rear light went on and off "[p]ossibly three times." As Hyatt got closer to the truck,

---

**2.** Mr. Welch was hospitalized a year earlier for dizziness and in August, 1972, was involved in another accident while driving a truck which turned over. No damages were sought as a result of this second accident.

he noticed that "it was beginning to come from the right part of the—side of the highway toward the center line with the front wheels like it was going to turn to the left." Hyatt began to apply the brakes. Welch "continued to be in motion going to the left of the highway." Hyatt put on the brakes and the car began to slide. Hyatt "could see" that Welch was "going to cross the center line in the lane of passing lane [sic] that I was in. And I had thought how will I miss the truck altogether, so I pulled my car to the right [eastbound] lane." The cars kept getting closer and "I thought if there was any way possible to get around behind why that is what I wanted to do to miss it completely." But the cars collided— Hyatt's left fender and bumper "contacted" the bumper of the pickup. At the time of the impact, Hyatt testified that the front of the pickup was "[a]cross the center line." At the time of the impact the truck was traveling 7–10 miles per hour and Hyatt had slowed to ten miles per hour. Although he left skidmarks of 75 or 80 feet, he did not avoid the impact. The impact was referred to as a glancing blow. Hyatt's auto came to rest east of a "mailbox" headed east and the Welch truck came to rest in the "driveway" headed in the opposite direction (west). Mrs. Hyatt went to the trailer house and called the police.

On cross-examination, plaintiffs' counsel sought to show that Welch did not intend to turn left, and that Hyatt never sounded a horn at any time before he started to pass.

When asked on cross-examination "Now isn't it true that at no time, up to the moment that the two vehicles came together, isn't it true that no part of that pickup truck ever crossed the center line of the highway with the possible exception of the bumper, front bumper," Hyatt answered "I don't agree." Hyatt was unsure as to how much of the truck crossed the center line "because I was trying to . . . control my car." Hyatt was also confronted with his earlier deposition in which he stated that the pickup, prior to the collision, did not cross the center line.

When asked at what angle the pickup was at the moment of impact, Hyatt stated "It would have been sitting with the front portion of it to the left of the highway, of the centerline, with the rear part to the right." Due to the width of the highway and the width of the Welch pickup, counsel sought to show that the pickup moved "perhaps two feet" which indicated that Welch was going to turn left. He indicated the impact occurred "just about opposite" the driveway.

On cross-examination, of Hyatt, plaintiff's counsel asked:

"Q. All right. Now you have described to the jury here that if you are coming down the road, you see this pickup is on its own right hand side and it begins to move to the left but at no time did it cross the center line prior to the impact. Are you saying that during that period of time then that the pickup moved perhaps two feet which indicated to you that he was going to turn to the left?

A. Yes."

He did indicate, however, that the left front of the pickup was up to the driveway.

On redirect, Hyatt testified that at the time he saw the wheels of the pickup turn to the left, he was in the passing lane. He further testified that at the time of the occurrence, the pickup truck was headed "toward the driveway."

A highway patrolman, who came to the scene following the collision, testified. He described the road, the shoulders, the topography of the highway and the farm driveway. He testified as to the location of the vehicles after they came to rest after the collision. The Hyatt vehicle was parked on the south shoulder facing east and the Welch pickup was facing back to the west. There were two skidmarks beginning north of the centerline in the west bound traffic lane of approximately 87 feet. The skidmarks curved back to the south into the east bound lane and ended close to the south edge of the pavement "[j]ust directly south of the driveway." The officer found debris near the centerline of the highway

"at the same point where what would have been the left wheel skidding came across the centerline." The debris was just a few feet to the west edge of the driveway. Debris was found in the eastbound as well as the westbound lane. He checked the Welch vehicle, found no turn signaling devices but found it had only one brake light on the right rear—the left was not working.

After the evidence was closed and motions for directed verdicts on behalf of both parties were overruled, the court instructed the jury. The verdict directors for the plaintiffs were premised on the rear-end collision theory which authorized recovery unless the jury found that Welch was contributorily negligent. The court gave Instruction No. 4 which is one of the contentions of error here. Instruction No. 4 informed the jury:

"Your verdict must be for the Defendant whether or not you believe Defendant was negligent if you believe:

First, Plaintiff James Edward Welch failed to signal his intention to turn; and

Second, Plaintiff was thereby negligent; and

Third, such negligence of Plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained."

The court also gave a converse instruction:

"Your verdict must be for defendant on plaintiff James Edward Welch's claim for damages unless you believe that defendant was negligent as submitted in Instruction Number 4, [sic—2][3] and that plaintiff James Edward Welch sustained damage as a direct result thereof."

The trial court refused to give offered Instructions No. 13 and 14 which informed the jury that its verdict must be for the plaintiff if the defendant either failed to sound his horn before starting to pass plaintiff's pickup truck or permitted his automobile to come into collision with the rear of plaintiff James Edward Welch's pickup truck and defendant's conduct in any one or more of such respects was negligent and as a direct result of such negligence plaintiff sustained damage.

During the closing argument of plaintiff's counsel, counsel referred to the plaintiff's verdict director.

"Then, the Court says, 'as a direct result of that negligence,' that is of the defendant running into the rear end of the plaintiff, 'that the plaintiff sustained damages—' . . . 'unless you believe that plaintiff' is not entitled to recovery by reason of Instruction No. 4.'

"Now this is where we really get into the swearing match in this case. The plaintiff says, 'I had no intention of making any left-hand turn. I was driving down the road and all of a sudden I was struck in the rear end.' The defendant says, 'I was coming down the highway, . . . we come [sic] around a curve . . . and at that time the old pickup is about 150 feet from the driveway', and at that time the defendant says, 'Well it looked to me like the plaintiff's pickup was pulling to the left.' . . . Was the plaintiff intending to make a left-hand turn and if so, what evidence was there that the defendant observed at that time to indicate that? I submit to you there wasn't any evidence . . . .''

Counsel referred to Hyatt's deposition in which he stated that at no time was the pickup across the center line at the time of impact.

In defendant's closing argument counsel informed the jury that Hyatt observed the "wheels turn to the left.[4] This truck started to the left and he applied the brakes . . . . [H]e observed the truck coming over." He also referred to the physical

---

**3.** Instruction No. 4 of course was the contributory negligence instruction—this is an obvious error; Instruction No. 2 was the verdict director on James Welch's claim.

**4.** Hyatt testified that "As I got closer to the truck, and it continued to move on as we kept gaining upon the truck, I noticed that it was beginning to come to the right part of the—side of the highway toward the centerline with the front wheels like it was going to turn to the left."

facts—debris near the center line of the roadway; at the same point where what would have been the left wheel skidding came across the center line; that the debris was just a few feet to the west edge of the driveway; the place the vehicles came to rest, a spare tire still lying in the bed of the truck; a glancing blow coming back to the right trying to miss him. Defendant also referred to Instruction No. 4 during argument:

"But there is another instruction in here that says if you find that this man was *making a left turn and you believe that,* then regardless of what you think Mr. Hyatt was doing, he still can't recover, the plaintiff can't recover. If you find *that he was making a left turn without giving a* timely warning . . . ." (Emphasis added)

After the instructions were given and arguments made, the jury retired and returned a verdict for the defendant. The judgment was entered on the verdict. In due course, plaintiffs filed their motion for new trial. In the motion plaintiffs contended the court erred in refusing to give the offered Instructions Nos. 13 and 14. With reference to Instruction No. 4 the motion stated:

"5. That the Court erred in giving and reading to the jury Instruction No. 4 submitted by Defendant Hyatt, over objection of Plaintiffs, which instruction erroneously directed and permitted the jury to return a verdict for Defendant if the jury found that Plaintiff James Edward Welch failed to signal his intention to turn which instruction erroneously assumed facts not in evidence, to wit: that Plaintiff . . . intended to turn or was making a turn of his vehicle at the time of the collision . . . ; that said instruction was further erroneous in that there was no evidence that a failure, if any, of Plaintiff . . . to signal his intention to turn was a proximate or contributing cause of the collision mentioned in evidence."

No mention was made about the erroneous reference in Instruction No. 5 to Instruction No. 4 instead of Instruction No. 2.

On appeal, plaintiffs urge reversal and contend the trial court erred (1) in giving Instruction No. 4 because such instruction erroneously hypothesized that plaintiff "failed to signal his intention to turn" when there was no evidence to show that plaintiff intended to "turn" or that he was in the act of turning; (2) in giving Instruction No. 4 because the instruction erroneously assumed a controverted fact that plaintiff intended to and was making a left turn; (3) in refusing to give Instructions No. 13 and 14 because failure to sound a horn before starting to pass was a pleaded ground of negligence which the evidence supported and (4) in giving Instruction No. 5 because it referred to Instruction No. 4, the contributory negligence instruction and the giving of such instruction was "plain error."

As to the first point, plaintiffs argue that it was the defendant's theory that Welch was guilty of contributory negligence because—as alleged in his answer—plaintiff commenced a turn to the left without first giving a timely and adequate signal. They argue that plaintiff "positively testified that he did not intend to turn into this driveway"[5] and the vehicle never crossed the center line. They contend that there was no sufficient evidence that Welch was in fact intending to turn left or that he was turning—in the sense of "accomplishing a permanent change of direction." "Plaintiff so testified and there is no testimony directly contradicting his testimony."[6] Plaintiffs emphasize certain testimony of the defendant Hyatt—as he got closer it was moving from right to left "toward the center line," like it was "going to turn to the left." He continued "in motion going to the left of the highway" and he could see that "it was going to cross the center line." Appellants say that "[s]till there is no testimony that

---

5. His exact words were that he "wasn't" going to go to that trailer house to see "that man [Jack]" about some parts for the pickup truck at the time of the accident.

6. Appellants rely on *Thomas v. Fitch*, 435 S.W.2d 703 (Mo.App.1968).

any part of the truck crossed the center line." [7] Appellants argue that in any event the angle of the turn was very slight which constituted "more of a veer" and that such a slight turn (he contends two feet) is not a "turn" within the meaning of § 304.019. A "turn" is a permanent change of direction for the purpose of proceeding in an entirely different direction. Section 304.019, it is contended, does not prohibit every slight deviation from a straight course so long as the vehicle does not leave its right hand side of the highway.[8] Appellants conclude by contending that plaintiff could not have been contributorily negligent in failing to signal an intended left turn in the sense of a turn across the left lane. At most, Welch was negligent in his failure to signal an intention to move right or left upon a roadway, the fourth and separate occasion for a signal under § 304.019 which was not in issue here.

As to the second point, plaintiffs argue that Instruction No. 4, the contributory negligence instruction, is erroneous because in stating that plaintiff "failed to signal his intention to turn" it assumes that plaintiff had an "intention" to turn and was in the act of turning—a controverted fact in the trial. Appellants argue that a jury would conclude that the instruction assumed as an undisputed fact that Welch intended to turn and that the only question was whether or not he failed to give a signal of his intention to turn.[9]

As to the third point, appellants argue that the refused Instructions No. 13 and 14 referring to alternative submissions of de-

fendant's failure to sound a horn or permitted his automobile to come into collision with plaintiff's truck should have been given because the petition alleged the failure to sound a horn as an additional ground of negligence. If defendant had sounded his horn when he first started to pass a jury could reasonably have found that plaintiff would then have kept his attention on the defendant's automobile—he could have seen him in the rear mirror and he would have kept his truck as close to the right side of the road and possibly over onto the shoulder, when he saw defendant's automobile move to the right.

And lastly, he argues that Instruction No. 5 was erroneous because it inadvertently referred to Instruction No. 4 (the contributory negligence instruction) rather than Instruction No. 2 (the verdict director). This was an obvious error and although not mentioned in the motion for new trial plaintiffs urge that we treat the erroneous reference as "plain error" under Rule 84.13(c).

On the other hand, respondent contends that (1) the court did not err in giving Instruction No. 4 because it was supported by substantial evidence; (2) the court did not err in giving the instruction on the ground that it assumed plaintiff intended to make a left turn because (a) the matter was not preserved in the motion for new trial [10] in that the motion did not state that appellants had "some complaint related to the assumption of a controverted fact," and (b) "since the jury did not find for defendant without finding plaintiff intended to or was making a left turn," (3) the court did not

---

7. Hyatt did testify however that at the time of the impact the front of the pickup was "[a]cross the center line." He also stated *"I could see* that it was going to cross the center line and be in the lane of passing line that I was in." He disagreed when asked "isn't it true that no part of that pickup truck ever crossed the center line of the highway . . . ."

8. Appellants rely on *Noce v. United Railroads,* 53 Cal.App. 512, 200 P. 819 (1921); and *Balzer v. Caldwell,* 220 Wis. 270, 263 N.W. 705, 707–708 (1935).

9. He relies on *Hawkeye-Security Ins. Co. v. Thomas Grain Fum. Co., supra; Hengelsberg v.*

*Cushing, supra; Melber v. Yourtee, supra;* and *Bledsoe v. Northside Supply & Development Co., supra.*

10. Respondent argues that the motion merely stated that Instruction No. 4 was improper because the instruction "erroneously assumed facts not in evidence," . . .; respondent fails to point out in his brief however that the allegations in the motion continued by stating "to wit: that Plaintiff . . . intended to turn or was making a turn of his vehicle at the time of the collision mentioned in evidence . . . ."

err in refusing to give Instructions No. 13 and 14 because there was no substantial evidence that a failure to sound a horn directly and proximately caused the collision, and (4) the misnumbering in Instruction 5 was not plain error.

As to the first point raised by the appellants in analyzing whether there is evidence to support the submission of a contributory negligence submission, we consider the evidence in the light most favorable to the defendant and give him the benefit of all favorable inferences reasonably to be drawn from all of the evidence. Plaintiff's evidence is to be disregarded unless it tends to support the grounds of contributory negligence submitted in the instruction. *Thomas v. Fitch*, 435 S.W.2d at 709; *Jackson v. Skelly Oil Company*, 413 S.W.2d 239, 242 (Mo. banc 1967); *Highfill v. Brown*, 340 S.W.2d at 661.

We hold that there was substantial evidence to support the giving of the contributory negligence Instruction No. 4. While the plaintiffs argue that the Welch movement was only a *veer* and not a substantial change of direction which a turn implies, there was substantial evidence from which the jury could find that the plaintiff intended to turn or was in the act of turning into the driveway. However, halting the description given by the defendant of the events, there was substantial evidence that the plaintiff was in the act of turning and crossed the center line before the impact.[11] His testimony considered in the context of the position of the Welch truck after impact, and the other physical facts related above supports the contributory negligence submission of the contributory negligence instruction. The evidence to support such a submission need not be by direct and positive testimony only but may be shown by proof which fairly suggests that the contributory negligence proximately produced the injury.

In *Thomas v. Fitch, supra,* a rear end collision where plaintiff asserted his vehicle was completely in the right lane at the time of impact, the court affirmed a judgment for defendant. Plaintiff denied he ever crossed the center line and denied he had undertaken or intended to turn left at an intersection. Defendant testified that as the front of his car approached the rear of plaintiff's vehicle he pulled into the left lane more or less straddling the center line. Defendant estimated the impact occurred two or three feet left of the center line of the highway. The court gave an instruction which in part related to the plaintiff's failing to signal his intention to turn. Plaintiff objected because there was no substantial evidence that plaintiff intended to turn. The court stated:

"'Intention' is a state of mind seldom capable of direct proof and ordinarily is determinable only through logical deduction from proven facts. The question of intention is usually decided by the trier of the facts, and while a party may testify to his intention at a given time, if his testimony is at variance with the evidence it is of little value." 435 S.W.2d at 709.

In *Thomas,* the evidence showed that plaintiff decreased his speed as the vehicle neared the intersection, the vehicle moved left and partially into the left lane so as to completely straddle the center line. The court held that under the facts it was permissible for the jury to infer and deduce from the evidence that plaintiff did, in fact,

11. Among other matters, Hyatt testified that (1) as he got closer to the truck after the right rear light flickered it was beginning to go to the center line with the front wheels like it was going to turn left, (2) Welch continued in motion going to the left of the highway, (3) he could see *Welch was going to cross the center line,* (4) at time of impact the front of the truck was across the center line, (5) the truck slowed to 7-10 m. p. h., (6) Hyatt did not agree when asked isn't it true that no part of the truck crossed the center line. The physical facts, as outlined above, also support the submission of the contributory negligence instruction—debris close to center line; skidmarks which come back into the eastbound lane, damage to the pickup indicates a glancing blow; the position of the vehicles after the collision; plaintiff was looking for replacement windows; debris deposited 18–20 feet west of the driveway near the center line; plaintiff knew "Jack."

undertake and intend to turn left and that it was proper for the trial court to submit the instruction on contributory negligence.

*Thomas* is persuasive here. Not only is there testimony here that a portion of Welch's vehicle crossed the center line, but the physical facts permit the jury to infer and deduce from the evidence that plaintiff intended to turn.

■ Plaintiffs in their reply brief contend nevertheless that the trial testimony of the defendant was contradicted by his deposition testimony that no part of the Welch truck had crossed the center line before the collision and so the probative effect of his court testimony was nullified. The plaintiffs claim the effect of the rule [*Adelsberger v. Sheehy*, 332 Mo. 954, 59 S.W.2d 644, 647[6, 7][8] (1933)] that contradictory testimony by a witness on an issue—without other explanation—does not make a prima facie submission on that issue. That principle, however, does not appertain here and must be distinguished from the principle that the prior statement of a witness, even when the witness is a party, although admissible as impeachment, does not destroy the prima facie effect of his proof at the subsequent trial. *Bonastia v. Terminal Railroad Ass'n of St. Louis*, 409 S.W.2d 122, 125–126 (Mo.1966). That is because testimony given at the trial is subject to cross-examination and so is trustworthy to prove an issue, while the prior statement is hearsay as to that issue and so is valuable only as impeachment. McCormick on Evidence, § 34, et seq.; 88 C.J.S. Trial § 214(2). When the prior inconsistent statement comes from a witness who is also a party to the proceeding, the statement may be used in two aspects: as an admission of the adversary and so as substantive evidence upon the fact issues, or for the limited purpose of impeachment of credibility. *Swift v. St. Louis-San Francisco Ry. Co.*, 15 S.W.2d 964, 968–969 (Mo.App.1929); *David-*

son v. *St. Louis-San Francisco Ry. Co.*, 301 Mo. 79, 256 S.W. 169, 170[3] (banc 1923); McCormick on Evidence, § 37. The deposition testimony that Welch turned left without signal across the center line of the highway; these contradictions were for the jury to assess. The trial testimony of the defendant that Welch made that maneuver was substantial evidence to support the contributory negligence instruction.

Appellants' principal contention is that Instruction No. 4 based on MAI 17.06 is erroneous because it assumes a controverted fact in the cause—the plaintiff intended to and did turn left.[12] Plaintiffs contend that the first paragraph of Instruction No. 4—that Welch "failed to signal his intention to turn" assumes the controverted fact that Welch intended to and did turn and thus violates the basic principles of instructions. Plaintiffs in reality contend that MAI 17.06 is not a viable instruction because it assumes a controverted fact and violates the comments of MAI 1.02 that where a ground of negligence consists of several elements they still must be stated in the conjunctive.

■ It is true that:

"The clear purpose of the new method of instructing juries, adopted by Supreme Court Rules 70.01 and 70.02, V.A.M.R., effective January 1, 1965, was to submit ultimate issues, not evidentiary details. . . . Plaintiff, in drafting the instruction, was subject to the requirement that the instruction submit only the ultimate factual issues, be within the general scope of the pleadings, not assume issuable facts, and be understandable by a reasonably intelligent jury." *Zipp v. Gasen's Drug Stores, Inc.*, 449 S.W.2d 612, 617 (Mo.1970).[13]

While the general principle has been and is that an instruction assuming controvert-

---

12. Respondent contends this issue is not preserved. But a fair reading of allegation 5 of the motion for new trial convinces us that this issue was sufficiently, although not clearly articulated, preserved for purposes of appeal.

13. *See also Price v. Seidler*, 408 S.W.2d 815, 823–824 (Mo.1966)—assumption of issuable facts were improper before MAI; they are still improper under the new method. *Penberthy v. Penberthy*, 505 S.W.2d 122, 130 (Mo.App.1973).

ed facts is error[14], the facts of each case must be inquired into. If close scrutiny of the instruction demonstrates that it is calculated to lead the jury to believe assumed disputed facts the instruction suffers from the infirmity of the principle. *Cf. Kewanee Oil Company v. Remmert-Werner, Inc.*, 508 S.W.2d 23, 26 (Mo.App.1974).

Plaintiffs rely on several cases to support their position that Instruction No. 4 suffers from the infirmity of assuming the controverted fact of "intending to turn" when the instruction refers to Welch's failure to "signal his intention to turn."

In *Hawkeye-Security Ins. Co., supra*, the court gave an instruction which informed the jury the verdict must be for the defendant whether or not defendant was negligent if it believed that the plaintiff's insured failed to swerve or disregarded electric warning signals or arm signals given by defendant. The instruction was a composite of several. The submission of the "disregarded signals" element in the instruction, the court held, abdicated to the jury its essential function of declaring the law of the case by defining the facts which were for the jury's determination. The submission was erroneous because it gave the jury a roving commission and an unlimited license to find contributory negligence on any theory of its own invention. *Additionally*, the court stated the "disregarded signals" submission was erroneous because it assumed as a fact that hand signals were given and did not require a finding that there was apparent danger of a collision as a predicate to the performance of some evasive action.

In *Bledsoe*, an action for personal injuries sustained in an airplane crash, the court gave a contributory negligence instruction requiring a verdict for the defendant if the plaintiff "failed to retract the landing gear of the airplane after it left the ground, *thus decreasing the airspeed and reducing the airworthiness of said airplane*"; "flew the

airplane in too steep a climbing attitude under the conditions then and there existing, *thus decreasing the airworthiness of said airplane*." The court held the instruction erroneous because each alternative assumed the fact required to be found which would have a certain result and because the alternatives do more than assume facts. "They assume that the facts required to be found would have certain definite results . . ." because of the word "thus".[15] 429 S.W.2d at 728–733.

These decisions relied upon by the appellants are not in our opinion controlling. They clearly violate the principle of assumption of controverted facts and either gave the jury a roving commission or proceeded to compel certain definite results. *Bledsoe* required the jury to accept as a matter of course, one controverted fact once a precedent fact was found to exist.

■ In the total context of this case, however, we hold that Instruction No. 4 was not prejudicially erroneous; the instruction when viewed with all the other facts did not cause confusion to the jury. The issue to be decided by the jury was whether under the testimony and the physical evidence Welch intended to and did turn left into the driveway. Counsel for both parties recognized this issue in closing arguments as outlined in the facts above. The issue of whether there was a turn or not was made clear in the argument referring to the "swearing match." The jury was not confused as a result of this instruction. No juror could reasonably have returned a verdict for the defendant without having found that the plaintiff made and intended to make a left turn. The principal dispute was whether a left turn was made.

■ We believe, however, that in the future when a turn is a controverted and disputed fact, MAI 17.06 should require a finding that (1) there was a turn and (2) that there was a failure to signal an intention to turn. But under the circumstances

---

14. See the numerous decisions in Mo.Digest, Trial, ☞ No. 191(1)(6).

15. In *Bledsoe*, the error was not cured by the giving of an instruction that the court does not mean to assume as true any facts referred to in these instructions.

here, the instruction was not prejudicially erroneous [16] and the court did not err in giving it.

■ The plaintiffs next complain that the court refused Instructions No. 13 and 14 based on the negligence of the defendant for failure to sound his horn before he began to pass the Welch truck. The theories of these tendered submissions contradict the trial theory and evidence of the plaintiffs that their truck was struck at the rear as it proceeded straight ahead in the proper lane of travel. A plaintiff may not rest recovery on a theory which gainsays his own positive evidence. *Tomlin v. Alford*, 351 S.W.2d 705, 711[3, 4] (Mo.1961). Nor, on the rear-end collision recovery submitted by plaintiffs, could the failure to sound a horn have been the proximate cause of their injury. *Linneman v. Freese*, 362 S.W.2d 585, 587[2] (Mo.1952). There was no error in refusal of these instructions [Nos. 13 and 14].

■ The last point contends that Instruction No. 5 for defendant which, on the model of MAI 33.03(5), undertakes to converse causation and damages was erroneous because it misrefers to another instruction and so renders the direction meaningless. The plaintiffs made no timely objection to the submission and so contend for plain error under Rule 84.13(c). Instruction No. 5 as given directs:

> "Your verdict must be for the defendant on plaintiff James Edward Welch's claim for damages unless you believe that defendant was negligent as submitted in *Instruction No. 4*, and that plaintiff James Edward Welch sustained damage as a direct result thereof. [Emphasis supplied.]"

Instruction No. 4 was actually the contributory negligence submission of the defend-

ant, the reference intended was to Instruction No. 2, the verdict-director of plaintiff Welch. The plaintiffs now say that the misreference misled the jury and the verdict resulted from that plain error. The plaintiffs have not shown such prejudice nor does the record disclose any. The issue before the jury was single, clear and simple—whether plaintiff Welch made a left turn on the highway. It was an issue definitively presented by the evidence and the arguments and one from which the jury could not have been distracted by the misreference in Instruction No. 5.

In the total context of this case we find no reversible error.

The judgment is affirmed.

BARDGETT and SEILER, JJ., and FINCH, Senior Judge, concur.

MORGAN, C. J., dissents in separate dissenting opinion filed.

RENDLEN, J., and ALDEN A. STOCKARD, Special Judge, dissent and concur with separate dissenting opinion of MORGAN, C. J.

DONNELLY, J., not sitting.

WELLIVER, J., not participating because not a member of the court when cause was submitted.

MORGAN, Chief Justice, dissenting.

I respectfully dissent.

As recognized in the principal opinion, plaintiff (in the front vehicle) testified that "he had no intention to turn," and that he did not leave the right side of the highway. To the contrary, defendant (in the following vehicle) testified that plaintiff did drive to the left of the center line. Thus, it would appear that whether or not plaintiff turned

---

16. The instruction is not inconsistent with the decisions relied upon in plaintiffs' motion to transfer: *Highfill v. Brown, supra,* failed to submit facts to base a finding that plaintiff intended to turn left; *Day v. Mayberry, supra,* required the inclusion in the instruction of the status of a discovered trespasser and a necessary element of recovery; *Melber v. Yourtee, supra,* deals with sole cause.

Neither does the instruction MAI 17.06 violate the principle that where there are several elements of negligence they must be submitted in the conjunctive. The example given in MAI 1.02 comments is that of the humanitarian doctrine. Under § 304.019, negligence consists of turning when not safe to do so and then only after a signal.

left was the ultimate issue as to liability and was for the jury to decide.

MAI 17.06 was not applicable to the facts of this case because said instruction "assumes" that a turn was being made. It is appropriate only in those instances where the adequacy of the signal is the ultimate issue. The instruction should have been modified to hypothesize the fact of a turn and require the jury to so find. Thereafter, and for the first time, a signal or lack thereof would become an issue for resolution.

Admittedly, the contributory negligence instruction given (No. 4) *assumed* that a turn was made and guided the jury toward the presence or absence of a signal. The instruction thereby failed to require resolution of the real issue. *Price v. Seidler*, 408 S.W.2d 815, 824 (Mo.1966); *Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co.*, 407 S.W.2d 622, 630 (Mo.App.1966); *Thompson v. Gray*, 415 S.W.2d 299 (Mo.App.1967).

Although defendant gave a different version as to what happened, plaintiff by the instruction given was denied any hope the jury would believe his version.

The judgment should be reversed.